NOT FOR PUBLICATION (Doc. Nos. 10, 11)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SOUTH JERSEY GAS COMPANY, | |
| Plaintiff, | Civil No. 09-4194 (RBK-JS) |
| v. | **OPINION** |
| MUELLER COMPANY, LTD., MUELLER GROUP, LLC, ECLIPSE INC., ROCKFORD ECLIPSE, INC., ECLIPSE COMBUSTION AND/OR POWER EQUIPMENT CO., et al., | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon a motion by Defendants Mueller Company, LTD and Mueller Group, LLC (collectively, "Mueller Defendants") to dismiss the Complaint of Plaintiff South Jersey Gas Company for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment, and upon a motion by Defendants Eclipse, Inc., Rockford Eclipse, Inc., and Eclipse Combustion and/or Power Equipment, Co. (collectively, "Eclipse Defendants") to dismiss Plaintiff's Complaint for failure to state a claim. The Complaint alleges breach of express warranties as well as the implied warranties of merchantability and fitness for a particular purpose. For the reasons expressed below, the Court will grant the Mueller Defendants' motion in the alternative for summary judgment, convert the Eclipse Defendants' motion to dismiss into

1

one for summary judgment, and grant the Eclipse Defendants ten days to respond.

**I.     BACKGROUND**

South Jersey Gas is a public utility corporation in the State of New Jersey engaged in the transmission, distribution, transportation, and sale of natural gas in Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester, and Salem Counties.  In the late 1980s and early 1990s, South Jersey Gas purchased various high-pressure shut-off valves from the Eclipse and Mueller Defendants, including Rockford-Eclipse Series 125 Lube-Ring Gas Service Valves and Rockford-Eclipse Series 175 Lube-Ring Gas Service Valves (collectively, "the Valves").  The Valves were designed to be installed just upstream of a customer's gas meter to prevent gas from flowing to the meter during meter servicing or replacement.  In 1993, the Eclipse Defendants sold the Rockford-Eclipse product line to the Mueller Defendants, who continued to design and sell the Valves under the Rockford-Eclipse product line.

In February of 2005, an explosion occurred at the residence of a South Jersey Gas customer in Voorhees, New Jersey causing property damage to the customer's home, as well as an adjacent residence, apparently as a result of a design defect in the Valves.  In the years that followed, four other South Jersey Gas customers reported experiencing Valve failures.  As a consequence, South Jersey Gas now finds itself compelled to remove the allegedly defective Valves from the roughly 70,000 southern New Jersey homes and businesses into which they were installed.

On or about July 17, 2009, South Jersey Gas filed a Complaint in New Jersey Superior Court alleging that the Eclipse and Mueller Defendants warranted that the Valves were free from defect in material and workmanship under normal use, service, and maintenance and that the

Eclipse and Mueller Defendants breached this warranty by selling defectively designed Valves. The Complaint also alleges that the defective design breached the implied warranties of merchantability and fitness for a particular purpose. On August 17, 2009, the Mueller Defendants filed a Notice of Removal with this Court, and upon Court order, filed an Amended Notice of Removal to properly allege diversity of citizenship pursuant to 28 U.S.C. § 1332.

On September 25, 2009, the Mueller Defendants filed a motion to dismiss the Complaint, or in the alternative, for summary judgment, arguing that the statute of limitations has run. That same day, the Eclipse Defendants filed a similar motion to dismiss on the same basis. On October 19, 2009, South Jersey Gas filed a brief opposing both Defendants' motions, to which the Eclipse and Mueller Defendants subsequently replied in late October. Accordingly, the motions are ripe for consideration.

## II.   STANDARDS

### A.   Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis. Ashcroft v.

3

Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

      B.      **Motion for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 Fed. Appx. 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   DISCUSSION

The Defendants argue that South Jersey Gas cannot maintain its warranty claims because the applicable statute of limitations has run. In opposition, Plaintiff argues that the Defendants' motions are premature, its claims are not time-barred because South Jersey Gas has only recently discovered the Valves' defective design, and that equity dictates ignoring the statute if the Court otherwise finds the claims time-barred.

5

### A.     Prematurity

Plaintiff argues that Defendants' motions are premature because the warranties identified by Defendants in support of their respective motions may not apply to all of the transactions between the parties. To support its motion to dismiss, the Eclipse Defendants submitted a document entitled "Rockford-Eclipse Terms and Conditions of Sale" dated November 1990, which contains provisions entitled "Performance Guaranty" and "Limited Warranty on the Equipment Itself" (the "Eclipse Warranty"). Likewise, to support its motion to dismiss, the Mueller Defendants submitted a document entitled "Limited Warranty" dated November 1992 (the "Mueller Warranty"). Plaintiff maintains that the Court cannot rely on these warranties to decide Defendants' motions because the Complaint alleges a series of transactions between the Eclipse and Mueller Defendants during the late eighties and early nineties and Defendants offer no proof that the documents submitted relate to any or all of those transactions. Plaintiff also argues that the Mueller Warranty cannot possibly govern any valve transaction between South Jersey Gas and Mueller because the document predates the sale of the Rockford-Eclipse line.

The Mueller Defendants respond by submitting the affidavit of Mueller, LLC Vice-President Leo W. Fleury, Jr., who attests that the Mueller Warranty is the exact same warranty that Mueller provided for the Valves it sold Plaintiff from 1993 to 1999 and is the only warranty that Mueller ever provided for the Valves. (Aff. of Leo W. Fleury, Jr. ¶¶ 7-9.) The Fleury Affidavit is a matter outside the pleadings, which cannot be considered on a motion to dismiss. See Fed. R. Civ. P. 12. However, because the Mueller Defendants styled their motion in the alternative as one for summary judgment, South Jersey Gas has been on notice that the Court could treat the motion as one for summary judgment under Federal Rule of Civil Procedure

6

12(d).  See Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996); Carver v. Plyer, 115 Fed. Appx. 532, 536 (3d Cir. 2004) (not precedential).

Plaintiff attached an affidavit to its opposition papers, but Plaintiff did not offer any evidence to support the proposition that it ever received a materially different warranty from the Mueller Defendants.  Although Plaintiff insists in its papers that it requires discovery in order to unearth the various warranties it argues it was given (and upon which, incidentally, its claims are predicated), Plaintiff has not filed a motion under Federal Rule of Civil Procedure 56(f), nor has it provided the Court with an affidavit specifying why it cannot present evidence of the existence of additional warranties.  Because South Jersey Gas has thus failed to establish that the applicability of the Mueller Warranty is genuinely disputed, the Court must accept that the Mueller Warranty applies to the transactions between the Mueller Defendants and Plaintiff for purposes of the converted summary judgment motion.

The Eclipse Defendants have also responded by submitting evidence that the Eclipse Warranty applies to all of the transactions referenced in the Complaint.  In this regard, Eclipse submitted numerous documents produced during discovery in a related state court action.  Of most relevance here, Eclipse submitted the deposition transcript of then-Corporate Comptroller of Eclipse, Gregory Bruce Bubp, who testified that Rockford-Eclipse invoiced its products on a form containing standard terms and conditions and that he did not believe that those terms and conditions changed from the time he began working for the company in 1988 through 1993 when the valve line was sold to the Mueller Defendants.  (Dep. of Bruce Bubp at 38-39.)  South Jersey Gas did not come forward with evidence to rebut this testimony.

However, unlike the Mueller Defendants, the Eclipse Defendants did not move in the

7

alternative for summary judgment, and thus arguably Plaintiff was not on notice that the Court might consider matters outside the pleadings. On a straight motion to dismiss, the Court properly looks only to the allegations contained in the Complaint as well as a limited set of other documents that includes documents upon which a plaintiff's claims are based. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). In this case, the Complaint references multiple transactions covered by an express warranty that the Valves were not defectively designed and manufactured. Construing the Complaint in the light most favorable to Plaintiff, the possibility that the Eclipse Defendants granted Plaintiff multiple warranties is not foreclosed. Thus, considering only those documents properly before the Court, it remains an open question whether the Eclipse Warranty applies to any or all of the Valve transactions between Plaintiff and the Eclipse Defendants.

  Although the discovery documents the Eclipse Defendants produced do shed some light on the issue, these documents are matters outside the pleadings. As a consequence, the Court will, pursuant to Federal Rule of Civil Procedure 12(d), convert the Eclipse Defendants' motion into one for summary judgment. Presumably, if South Jersey Gas had any evidence that it received Valve warranties materially different from the Eclipse Warranty, it would have produced such warranties (or at least an affidavit attesting to their existence) in response to the Eclipses Defendants' motion. However, because Plaintiff is entitled to a reasonable opportunity to present all materials pertinent to a converted summary judgment motion, and because the Eclipse Defendants only produced the discovery documents as exhibits to their reply brief, the Court will defer deciding the Eclipse Defendants' converted motion and grant Plaintiff ten days to present evidence that the Eclipse Warranty does not control any or all of the Valve transactions

between the parties or otherwise respond to the motion. Accordingly, the Court will now proceed to the merits of the Mueller Defendants' motion only.

B.      Statute of Limitations

The parties do not dispute that this commercial dispute is governed by New Jersey's version of the Uniform Commercial Code or, more specifically, that the applicable statutory period for Plaintiff's breach of warranty claims is four years. The parties do, however, dispute when the cause of action accrued.

The starting-point of the accrual analysis in this case is N.J. Stat. Ann. § 12A:2-725, which provides, in pertinent part:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

N.J. Stat. Ann. § 12A:2-725(2). This provision quite clearly establishes a general rule, that the discovery principle does not apply to breach of warranty actions, and an exception, applicable to warranties that explicitly extend to future performance. See Foodtown v. Sigma Mktg. Sys., Inc., 518 F. Supp. 485, 488 (D.N.J. 1980).

In an attempt to locate accrual upon tender of delivery in the early nineties, the Mueller Defendants argue that the Mueller Warranty does not explicitly extend to future performance. A warranty that explicitly extends to future performance of goods under N.J. Stat. Ann. § 12A:2-725(2) is more than a mere representation the condition of a product at the time of delivery. See Comm'rs of Fire Dist. No. 9 v. Am. La France, 424 A.2d 441, 445 (N.J. Super. Ct. App. Div.

1980). The hallmark of such a warranty is a reference to a specific future time period during which the goods are warranted to perform. Id.; Travelers Indem. Co. v. Dammann & Co., Inc., 592 F. Supp. 2d 752, 764 (D.N.J. 2008). Specificity is required to create a warranty explicitly extending to future performance because, in a sense, all warranties refer to the future, and all warranties do not explicitly extend to future performance. See George Campbell Painting, Corp. v. Tenant Co., No. 94-4498, 1995 WL 224410, at *4 (D.N.J. April 7, 1995) (quoting J. White & R. Summers, Uniform Commercial Code § 11-9 at 551 (3d ed. 1998)).

By its own terms, the Mueller Warranty appears to extend to the future performance of the Valves. The Mueller Warranty provides, in pertinent part:

> Mueller Co. warrants its products to be free of defects in workmanship and material under normal use and service and when used for the purposes and under the conditions for which they are intended, for a period of one year from the date of shipment.
>
> Obligation under this warranty is limited, at Mueller's option; to adjust, repair or replace, F.O.B. point of manufacture, the defective product. Purchaser must immediately notify Mueller Co. in writing of the claimed defect.

(Mueller's Mot. Ex. A.) This warranty appears to contain a promise that the Valves will be of a certain character (free of defects in workmanship and material) for specified period of time in the future (one year from date of shipment).

The Mueller Defendants argue that the Mueller Warranty does not extend to the future performance of the Valves by attempting to characterize the Mueller Warranty as one "limited to repair or replacement." (Mueller Defs.' Br. at 5.) In Commissioners of Fire Dist. No. 9 v. American La France, to which the Mueller Defendants cite, the Appellate Division held that a certain "Apparatus Warranty," which essentially constituted "a 'conditional' warranty for a

period of one year from date of delivery involving only a remedy i.e., repair or replacement related to defective material or workmanship," was not a warranty extending to future performance of goods. 424 A.2d at 445. The court appeared to reason that the Apparatus Warranty related to the future activity of the guarantor, not the goods. Id.; see Docteroff v. Barra Corp. of Am., 659 A.2d 948, 954 (N.J. Super. Ct. App. Div. 1995).

The American La France court also considered a second warranty, entitled the "Specifications Warranty." This warranty provided:

> [B]idder guarantees that the item is of first quality throughout and complies in all respects to the standards regularly sold by the manufacturer in the lines ordered. All items to be guaranteed for one year after date of acceptance.

424 A.2d at 445. The Appellate Division held that the Specifications Warranty did extend to the future performance of the goods by reasoning that it explicitly referenced a future time period and did not "assume that the product will not perform and will need repair or replacement." Id.

The Mueller Warranty promises a future condition – that the Valves will be free from defect – and subsequently contemplates an obligation to repair should the Valves not conform. The Mueller Warranty does not contemplate that the Valves will malfunction within the year. The Mueller Warranty is therefore more than a mere representation of the condition of the goods at the time of delivery or a covenant to repair or replace. It promises that the Valves will act in a certain way, not merely that the Mueller Defendants will act in a certain way. See Poli v. DaimerChrysler Corp., 793 A.2d 104, 110 (N.J. Super. Ct. App. Div. 2002) (citing Cosman v. Ford Motor Co., 674 N.E. 2d 61, 66-67 (Ill. 1996)). Accordingly, the Court is satisfied that the Mueller Warranty explicitly extends to the future performance of the Valves, and thus that the exception embodied at N.J. Stat. Ann. § 12A:2-725(2) is potentially implicated.

The Mueller Defendants argue that even if the Mueller Warranty extends to the future performance of the Valves, Plaintiff's warranty claims are nonetheless time-barred because Plaintiff did not discover the defect during the one-year period provided for by the Mueller Warranty. According to this theory, the Mueller Warranty, in conjunction with N.J. Stat. Ann. § 12A:2-725(2), afforded South Jersey Gas with one year from delivery to discover the defect and four years thereafter to bring suit. Therefore, because the Mueller Defendants ceased selling Valves to Plaintiff in the early nineties, and Plaintiff did not discover the alleged defect until 2005, the Mueller Defendants insist that the claims are time-barred. On the other hand, South Jersey Gas asserts that the Mueller Defendants' reading subverts the plain and ordinary meaning of the statute. According to Plaintiff, the failure of N.J. Stat. Ann. § 12A:2-725(2) to explicitly limit the discovery period to the future warranty period means that the statute begins to run at the time of the actual or constructive discovery and stops four years later, regardless of the length of the underlying warranty.

The Court does not agree that Plaintiff's reading comports with the plain and ordinary meaning of the statute. As noted, the statute suspends operation of the discovery rule generally and reinstates it in a subset of cases "where a breach of warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance." See N.J. Stat. Ann. § 12A:2-725(2) (emphasis added). The second element of this conjunctive exception explicitly references discovery during "the time of such performance"; in other words, during the warranted period. See id. (emphasis added). The inclusion of this language satisfies the Court that the statute plainly instructs that the running of the statute awaits discovery of the defect, provided the defect is discovered during the warranty period. Apparently, courts in New

Jersey and elsewhere are inclined to agree.  See Standard Alliance Indus., Inc. v. Black Clawson Co., 587 F.2d 813, 821 (6th Cir. 1978) ("If the [product] fails within the warranty period, the limitations period should begin to run from the day the defect is or should have been discovered."); Am. La France, 424 A.2d at 444 (observing that the statute of limitations governing a claim for breach of a warranty explicitly extending to future performance does not begin to run until the defect is or should be discovered "provided the defect arose within the warranty period").

Reading the statute as Plaintiff suggests would effectively transform limited warranties for specific periods of time into unlimited warranties pursuant to which a seller's vulnerability to suit could potentially extend ad infinitum.  This is almost certainly not the result intended by the New Jersey Legislature.  N.J. Stat. Ann. § 12A:2-725 is meant to provide buyers with four years to bring suit on a warranty and to afford sellers with repose thereafter.  See Custom Commc'ns Eng'g, Inc. v. E.F. Johnson Co., 636 A.2d 80, 84 (N.J. Super. Ct. App. Div. 1993); see also Standard Alliance Indus., Inc., 587 F.2d at 820 (observing that Uniform Commercial Code § 725(2) reflects "the drafters' intention to establish a reasonable period of time, four years, beyond which business persons need not worry about stale warranty claims").  Accordingly, where a warranty does not cover future performance of the goods sold, it makes sense to run the statute of limitations from delivery.  By the same token, where a seller warrants a product for a specified period of time, it makes sense to delay running the statute until the defect is discovered, provided the defect is discovered during the period for which the product is actually warranted as anything

less could potentially dilute or extinguish the value of the warranty purchased.[1]

The same rationale does not, however, support delaying the running of the statute of limitations indefinitely simply because the parties to the warranty negotiated a warranty extending into the future. In this case, South Jersey Gas purchased, incident to the Valve transactions in the late eighties and early nineties, a one-year warranty. If South Jersey Gas had discovered the Valves' alleged defect at any point during the pendency of the Mueller Warranty, N.J. Stat. Ann. § 12A:2-725(2) would have entitled it to four years within which to bring this suit. Likewise, if South Jersey Gas had purchased a significantly longer warranty, it might also be entitled to sue. But, South Jersey Gas did not purchase a longer warranty (presumably because Mueller was unwilling to provide it at an acceptable price) and, of course, did not discover the alleged defect during the one-year warranty period. As a consequence, reading the statute as Plaintiff suggests, would effectively deprive the Mueller Defendants of the repose sought by the statute while at the same time affording South Jersey Gas with the benefit of a bargain it did not strike.

The Court's reading of the statute is also consistent with the Third Circuit's express warranty jurisprudence. For example, in Duquesne Light Co. v. Westinghouse Elec. Corp., the Third Circuit affirmed a district court's dismissal of a breach of warranty claim on the theory that the trial evidence established that the alleged defect did not manifest itself until after the

---

[1] Take the hypothetical case of a purchaser of a goods with a five-year warranty. If the running of the statute of limitations were not to await discovery of the defect, the buyer would not enjoy the full convenience of the four year period, and the warranty would be completely illusory in the final year. See generally Poli v. DaimlerChrysler Corp., 793 A.2d 104, 109 (N.J. Super. Ct. App. Div. 2002) (quoting Nationwide Ins. Co. v. Gen. Mot. Corp. / Chevrolet Motor Div., 625 A.2d 1172, 1173, 1176-78 (Pa. 1993)).

applicable warranty periods had expired. 66 F.3d 604, 617 (3d Cir. 1995). The warranties provided:

> Westinghouse warrants that the equipment furnished hereunder by Westinghouse shall be free from defects in workmanship and material and shall be suitable for operation as part of the [Nuclear Steam Supply Systems] sold hereunder.
>
> . . .
>
> The equipment warranty shall expire one year after successful completion of the Performance Test, but not later than three years after SHIPMENT, whichever occurs first. If, during said period, the Owner promptly notifies Westinghouse and establishes that the equipment warranty is not met, Westinghouse shall perform such repair replacement or modification as required to meet this equipment warranty.

Id. at 616. The court held that this language required the defect to manifest itself within one year. Id. The court observed the "general rule . . . that 'an express warranty does not cover repairs made after the applicable time . . . has elapsed,'" and thus concluded that "'latent defects' discovered after the term of the warranty are not actionable." Id. (quoting Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 249-50 (2d Cir. 1986)); see also Canal Elec. Co v. Westinghouse Elec. Co., 973 F.2d 988, 993 (1st Cir. 1992) ("[C]ase law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects – defects that may exist before, but typically are not discovered until after, the expiration of the warranty period.").

   Plaintiff's proposed reading of N.J. Stat. Ann. 12A:2-725 – that purchasers of a product warranty for a definite period of time are given an indefinite period of time to discover defects before initiating the running of the four year statutory period – does not comport with the general rule articulated in Duquesne. Moreover, although the Mueller Defendants do not make the argument, it appears to the Court that Plaintiff's express warranty claims must also fail as a direct

consequence of the language of the Mueller Warranty, quite apart from the statute of limitations. In this case, South Jersey Gas essentially alleges a latent defect – that the Valves were defectively designed during the warranty period, but that the defect was not discovered until many years afterwards. Like the equipment warranty in Duquesne, the Mueller Warranty protects against defects for one year and requires prompt notice to trigger the repair/replace obligation. Thus, the Mueller Warranty itself contemplates that defects discovered after the warranty period are not actionable as notice cannot be given as to undiscovered facts. See id. at 617. As a consequence, Plaintiff's breach of warranty claims against Mueller must fail whether by operation of the statute of limitations or by virtue of the fact that the Mueller Warranty simply does not warrant that the Valves will be defect-free in 2005.[2]  See Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 519, 522 (D.N.J. 2008).

Finally, Plaintiff asks the Court to ignore the statute of limitations and the explicit language of the Mueller Warranty in the name of equity. First, Plaintiff accuses the Mueller Warranty of being "illusory" because the Valves were unlikely to be used for many years post-installation and should have lasted, if properly designed, for fifty years or more. Second, Plaintiff asserts that it is against the public policy of New Jersey to allow Defendants to escape adjudication of this suit on the merits because otherwise customers would be required to pay twice – first for the Valves (through natural gas rates) and again for the replacement products

---

[2] The parties do not discuss the fate of Plaintiff's claims predicated on the implied warranties of merchantability and fitness for a particular purpose. As implied warranties, such warranties do not explicitly extend to the future performance of the goods. See Travelers Indem. Co. v. Dammann & Co., 592 F. Supp. 2d 752, 765 (D.N.J. 2008) (citing Cardinal Health 301, Inc. v. Tyco Elecs. Corp., 87 Cal. Rptr. 3d 5 (2008)). As a consequence, summary judgment is appropriate on these claims as well.

(through rate increases).

Contrary to Plaintiff's protestations, equity dictates neither result. South Jersey Gas is in the business of distributing natural gas and has not disavowed knowledge of the nature of the Valves for which it contracted. Presumably, then, South Jersey Gas knew at the time of its negotiations with the Mueller Defendants that unlike, say an automobile, the Valves would often not be used for many years; the Valves were not to be turned until gas meters needed repair or replacement and were to be installed with mostly new meters. Equipped with this knowledge, Plaintiff was in a position to purchase a longer warranty. Plaintiff did not purchase a longer warranty, and as a consequence, it incurred the risk of Valve failure outside the warranty period. It is not unfair to require South Jersey Gas to shoulder the financial consequences of the risk it assumed by purchasing a warranty of relatively short duration.

The fairness of this unfortunate outcome is not altered by the recognition that South Jersey Gas customers will likely foot the bill. Plaintiff cites to Weinberg v. Dinger for the apparent proposition that the Court should ignore legal rules that have the effect of requiring customers (the public) to pay twice for public utility products. 524 A.2d 366, 378 (N.J. 1987). In Weinberg, the New Jersey Supreme Court "reconsidered the longstanding New Jersey rule immunizing private water companies from liability for their negligence in failing to provide fire hydrants water pressure of sufficient force to extinguish a fire." Id. at 367. The court overturned the rule "except with respect to subrogation claims asserted by fire-insurance companies." Id. The court explained, in part, its reticence to abrogate immunity for subrogation claims in the following passage cited by Plaintiff:

> We believe that the imposition on a water company of liability for subrogation

>claims of carriers who pay fire losses caused by the company's negligent failure to maintain adequate water pressure would inevitably result in higher water rates paid by the class of consumers that paid for the fire insurance. The result of imposing subrogation-claim liability on water companies in such cases would be to shift the risk from the fire-insurance company to the water company, and, ultimately, to the consumer in the form of increased water rates. Thus, the consumer would pay twice – first for the property insurance premiums, and then in the form of higher water rates to fund the cost of the water company's liability insurance. We find this result contrary to public policy.

Id. at 378.

Plaintiff's reliance on Weinberg is misplaced. Much of the court's discussion in Weinberg on the issue of a private water company's common-law immunity from negligence actions predicated on a failure to provide sufficient water pressure to fire hydrants to extinguish fires is not relevant to the instant question of whether the statue of limitations bars South Jersey Gas's breach of warranty action. In Weinberg, the court looked to New Jersey public policy, at least in part, because the question of whether a common law duty exists is ultimately one of fairness. See id. at 374. The same cannot be said of the question of whether a breach of warranty claim accrues under N.J. Stat. Ann. § 12A:2-725 upon defect discovery where the defect is discovered well without the warranty period. This latter question requires only that the Court interpret the statute and apply it.[3]

Plaintiff's argument also asks the Court to step outside its proper role. The New Jersey Supreme Court in Weinberg relied on policy concerns to refrain from abrogating the common law. See id. As should be patently obvious, asking a state court of last resort to hold fast to its

---

[3] Plaintiff does not argue that its claims should be equitably tolled by way of fraudulent concealment. See N.J. Stat. Ann. § 12A:2-725(4) (preserving common law tolling); Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 523 (D.N.J. 2008) (citation omitted) (outlining elements of fraudulent concealment).

precedent in the face of changed circumstances is not the same thing as asking a federal trial court to ignore a controlling state statute. In other words, even if the Court were convinced, as it is not, that the public policy concerns undergirding the <u>Weinberg</u> decision were implicated in this case, such a conclusion would not justify ignoring an applicable statutory directive. If it is New Jersey's public policy to suspend operation of the statute of limitations with respect to a public utility's breach of warranty claims, the New Jersey legislature knows how to amend N.J. Stat. Ann. § 12A:2-725 to reach this result. Until such time, the Court will continue to apply the statute of limitations as New Jersey has codified it.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant the Mueller Defendants' motion, in the alternative, for summary judgment. The Court will also convert the Eclipse Defendants' motion to dismiss into one for summary judgment and grant Plaintiff ten days to respond.

Dated: 4-27-2010                                         /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge