# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SOUTH JERSEY GAS COMPANY, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 1:09-CV-04194-RBK-JS |
| vs. | : | |
| MUELLER COMPANY, LTD., MUELLER GROUP, LLC, ECLIPSE, INC., ROCKFORD ECLIPSE, INC., ECLIPSE COMBUSTION AND/OR POWER EQUIPMENT CO. AND XYZ ENTITY (A-Z), | : | AMENDED COMPLAINT |
| Defendants | : | |

Plaintiff South Jersey Gas Company, by and through its counsel, Cozen O'Connor, hereby demands judgment against defendants as follows:

### THE PARTIES

1. Plaintiff South Jersey Gas Company ("Plaintiff") is a public utility corporation of the State of New Jersey, with its principal place of business located at One South Jersey Plaza, Folsom, New Jersey.

2. Defendant Eclipse, Inc. is a corporation with a principal place of business located at 1665 Elmwood Road, Rockford, Illinois 61103-1299.

3. Defendant Rockford Eclipse, Inc. is a corporation with a principal place of business located at 1665 Elmwood Road, Rockford, Illinois 61103-1299.

4. Defendant Eclipse Combustion and/or Power Equipment Co. is a corporation with a principal place of business located at 1665 Elmwood Road, Rockford, Illinois 61103-1299.

5. Defendant Mueller Company, Ltd. is a corporation with a principal place of business located at 500 W. Eldorado Street, Decatur, Illinois, 62525-1808.

6. Defendant Mueller Group, LLC is a corporation with a principal place of business located at 500 W. Eldorado Street, Decatur, Illinois, 62525-1808.

7. Defendant, XYZ Entity (A-Z) is/are fictitious entities yet to be identified through discovery, including, but not limited to successor entities to the defendants named in this matter.

## FACTUAL BACKGROUND

8. Plaintiff is engaged in the transmission, distribution, transportation, and sale of natural gas within its defined service territory within the State of New Jersey. Said service territory includes all or portions of the following Counties: Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester and Salem. Within its service territory South Jersey serves approximately 350,000 customers.

9. Connected to Plaintiff's service lines were approximately 70,000 shut-off valves designed, manufactured distributed and sold by defendants.

10. When installed, a valve is located upstream of the Plaintiff's customer's gas meter, and allows Plaintiff to prevent gas from flowing to the meter in order, for example, to service, move, remove or replace the meter. It allows for a shut-off of gas to the meter and downstream of the meter.

11. In general, the gas distribution main runs parallel with a street, and a service line runs perpendicular from the distribution main to the customer's residential or business location. At the end of the service pipe is a riser from the ground to the gas meter. This riser is frequently located on the exterior of the residence or other building using the gas. On the riser, just prior to the meter, is the shut-off valve.

12. Until work is performed on a meter, there is rarely a reason to operate the valve off so as to prevent gas from flowing to the meter. Since most valves were installed when

new service lines were installed to connect new customers, it was foreseeable to defendants that most valves would not be shut for years and even decades after installation.

13. Defendants as designers, manufacturers, and sellers of the valves knew or should have known that the valves would not be operated as a matter of routine, standard operating procedure.

14. Upon information and belief, Plaintiff purchased various valves, including Rockford-Eclipse Series 125 Lube-Ring Gas Service Valves and Rockford-Eclipse Series 175 Lube-Ring Gas Service Valves (hereinafter all valves collectively referred to as "Valves"), from Rockford Eclipse in or around the latter part of the 1980s and early part of the 1990s.

15. These Valves were designed and manufactured by Rockford Eclipse, which was a division of Eclipse, Inc.

16. Plaintiff purchased these Valves from Rockford Eclipse, Eclipse, Inc. and/or Eclipse Combustion and/or Power Equipment Co. (collectively "Eclipse") for installation at customer's homes and/or businesses throughout Plaintiff's service territory.

17. Plaintiff installed these Valves at various customer's homes and/or businesses throughout Plaintiff's service territory.

18. At all relevant times, these Valves were installed, connected, started and operated in accordance with Defendant Eclipse's instructions.

19. These Valves were used for the applications specified by Defendant Eclipse.

20. These Valves were used in the environments as specified or limited by Defendant Eclipse.

21. Defendant Eclipse represented that these Valves were free from defects in material and workmanship under normal use, service and maintenance.

3

22. Upon information and belief, in or around 1993, Defendant Eclipse sold its Rockford Eclipse product line to Defendants Mueller Company, Ltd. and/or Mueller Group, LLC (collectively "Mueller").

23. Upon information and belief, Defendant Mueller continued to market, manufacture, design and sell the Valves under the Rockford Eclipse product line that Plaintiff had previously purchased from Defendant Eclipse.

24. Plaintiff purchased these Valves from Mueller for installation at customer's homes and/or businesses throughout Plaintiff's service territory.

25. Plaintiff installed these Valves at various customer's homes and/or businesses throughout Plaintiff's service territory.

26. At all relevant times, these Valves were installed, connected, started and operated in accordance with Defendant Mueller's instructions.

27. These Valves were used for the applications specified by Defendant Mueller.

28. These Valves were used in the environments as specified or limited by Defendant Mueller.

29. Defendant Mueller represented that these Valves were free from defects in material and workmanship under normal use, service and maintenance.

30. Defendants also made various representations about the Valves, including the following:

"maximizes resistance to corrosion"

"additional seal to prevent atmospheric leakage"

"for a tight seal and last indefinitely"

"insures precise tolerances are held between mating parts"

"provide thousands of cycles with no leakage and virtually no wear"

4

"No torque adjustments needed—even if stationary for long periods of time"

"Designed To Meet Your Needs"

"We guarantee the performance of our valves."

Operates properly "over the operating temperature range"

"Heavy duty operating head withstands tool abuse"

"Insulated O-Ring Union"

"All models meet or exceed" standards and requirements

"Temperature Range: -20° to +150°F"

"Maintenance Free Gas Service Valve"

"low design torque compared to conventional valves, yet the rotor cannot be turned by hand"

"seals valve against atmospheric leakage"

31. Contrary to the representations provided by Defendants Eclipse and Mueller, the Valves were not free from defects in material and workmanship under normal usage, service and maintenance.

32. Contrary to the representations provided by defendants, the Valves failed to meet the promises made to Plaintiff.

33. In or around February 2005, an explosion occurred as a result of a defectively designed Rockford-Eclipse Series 125 Lube-Ring Gas Service Valve at a residence located in Voorhees, New Jersey causing property damage to one of Plaintiff's customer's home and allegedly causing property damage to an adjacent residence.

34. Later, on or around July 18, 2005, Plaintiff experienced another failure of the Rockford Eclipse Series 125 Lube-Ring Gas Service Valves valve at a residence in Deptford, New Jersey caused by the defective design of the Rockford-Eclipse Series 125 Lube-Ring Gas Service Valve.

35. Recently, Plaintiff has also experience three other failures as a result of the defectively designed Rockford-Eclipse Series 125 Lube-Ring Gas Service Valve, including one failure on March 12, 2008 in Berlin, New Jersey.

36. An investigation, which was completed on or around July 2008, of the Rockford-Eclipse Series 125 Lube-Ring Gas Service Valve that caused the explosion and the other failures has concluded that the Valves that were purchased by Plaintiff from Defendants Eclipse and/or Mueller and installed in approximately 70,000 residences or businesses throughout Plaintiff's service territory were defectively designed.

37. In order to protect the public health and safety and to meet its statutory duty to provide safe, adequate and proper service to its customers, Plaintiff is compelled to remove the defectively designed Valves manufactured and sold to Plaintiff by Defendants from these residences and/or businesses and to replace them with properly designed and manufactured valves.

### COUNT I – VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### PLAINTIFF v. ROCKFORD-ECLIPSE, ECLIPSE, INC., ECLIPSE COMBUSTION AND/OR POWER EQUIPMENT CO., MUELLER COMPANY, LTD. AND MUELLER GROUP, LLC

38. Plaintiff repeats and incorporates each allegation of the Complaint as if set forth at length herein.

39. The New Jersey Consumer Fraud Act prohibits the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission or any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . or with the subsequent performance of such person as aforesaid." N.J.S.A. 56:8-2.

6

40. The Valves fall within the definition of "merchandise" provided in N.J.S.A. 56:8-1.

41. The unlawful practices employed by defendants here include, but are not limited to, representing that the valves have characteristics, uses and benefits that they do not and representing that the goods are of a particular standard, quality or grade.

42. Such unlawful practices also include Defendants continuing failure to warn Plaintiff contrary to the public health and safety.

43. Thus, in violation of the Consumer Fraud Act, Defendants employed unconscionable commercial practices, deception, fraud, false pretense, false promise and misrepresentation, and/or knowingly concealed, suppressed or omitted or material fact with the intent that Plaintiff rely upon such concealment, suppression or omission, in the sale of Valves to Plaintiff and in Defendants subsequent performance.

44. The New Jersey Consumer Fraud Act was intended to protect consumers such as Plaintiff from these types of practices.

45. As a result of the misrepresentations, Plaintiff sustained damages.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, including punitive and treble damages, together with attorneys fees, costs of suit and such other relief as the court may deem proper.

DATED:                                       COZEN O'CONNOR
                                             A Pennsylvania Professional Corporation


                                       By:   /s/ Dexter Hamilton
                                             Daniel J. Bitonti, Esquire
                                             Dexter Hamilton, Esquire
                                             Suite 300, Liberty View
                                             457 Haddonfield Road, P.O. Box 5459
                                             Cherry Hill, New Jersey 08002-2220

## CERTIFICATE OF SERVICE

I, Dexter Hamilton, hereby certify that on the 15th day of June, 2011, I served a true and correct copy of the Amended Complaint to the following counsel via ECF service:

Jeannette E. Viala, Esquire
O'Connor Kimball, LLP
1500 JFK Blvd., Suite 1100
Philadelphia, PA  19102

Tiffany Alexander, Esquire
Campbell, Campbell, Edwards & Conroy, PC
690 Lee Road, Suite 300
Wayne, PA  19087

By:   */s/ Dexter Hamilton*
         Dexter Hamilton, Esquire