IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - -

SOUTH JERSEY GAS COMPANY,      :  CIVIL ACTION NO. 09-4194
     Plaintiffs              :
                             :
     v.                      :  Camden, New Jersey
                             :  August 3, 2011
MUELLER COMPANY, LTD, et al,   :  2:00 o'clock p.m.
     Defendants              :
. . . . . . . . . . . . . . . :

HEARING
BEFORE THE HONORABLE JOEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE

- - -

APPEARANCES:

For the Plaintiffs:        DEXTER HAMILTON, ESQUIRE
                            SARA FREY, ESQUIRE
                            Cozen & O'Connor
                            457 Haddonfield Road
                            Suite 300
                            Cherry Hill, NJ  08002-2220

For the Defendants        CHARLES CARSON EBLEN, ESQUIRE
Mueller:                  Shook Hardy & Bacon, LLP
                            2555 Grand Boulevard
                            Kansas City, MO  64108

For the Defendants        JEANETTE E. VIALA, ESQUIRE
Eclipse:                  O'Connor Kimball, LLP
                            2 Penn Center Plaza
                            Suite 1100
                            1500 JFK Boulevard
                            Philadelphia, PA  19102

Audio Operator/ESR:       Denise Wolk

Transcribed by:           Paula L. Curran, CET

     (Proceeding recorded by Liberty Court Player digital
sound recording; transcript produced by AAERT certified
transcriber.)

Laws Transcription Service
48 W. LaCrosse Avenue
Lansdowne, PA 19050
(610)623-4178

1              (The following occurred in open court at 2:00

2     o'clock p.m.)

3              THE COURT:  Good afternoon, Counsel.

4              ALL:  Good afternoon, your Honor.

5              THE COURT:  Please be seated.  We're on the record.

6     This is the matter of South Jersey Gas Company versus Mueller

7     Company, Ltd, et al, Docket Number 09-4194.  Can we have the

8     entries of appearance, starting with the plaintiffs?

9              MR. HAMILTON:  Yes, your Honor, Dexter Hamilton,

10    Cozen O'Connor for South Jersey Gas.

11             MS. FREY:  Sara Frey for South Jersey Gas.

12             MS. VIALA:  Jeanette Viala on behalf of the

13    defendant Eclipse.

14             MR. EBLEN:  Charlie Eblen for the Mueller

15    defendants, your Honor.

16             THE COURT:  Okay, we're here for oral argument.

17    It's plaintiff's application, so we'll hear from plaintiff

18    first.  I've read the papers, I think I understand the

19    arguments.  The Court is, just so you know, the Court is

20    going to reserve decision.  There are a couple of issues I

21    wanted to address at this oral argument.  But hopefully,

22    we'll issue our opinion soon.

23             I don't know who's going to argue for the plaintiff.

24    If you're more comfortable at the table, that's fine.  If you

25    want to go up to the podium, that's fine.  Wherever you're

1   most comfortable.

2          MS. FREY:  Okay, I'll stay here so I can spread out.

3   Your Honor, as I said, Sara Frey for the plaintiffs, South

4   Jersey Gas and as you just stated, we are here on plaintiff's

5   motion for leave to file an Amended Complaint.  This case was

6   remanded by the 3rd Circuit to this Court, for consideration

7   of the motion.

8          One of the issues the Court brought to counsel's

9   attention earlier last week, was what is the standard of

10  review for this matter and I thought I would address that

11  first.  We filed our motion pursuant to Rule 15, which

12  governs amendment of pleadings.  The defendant raised the

13  issue with respect to Rule 59 and the Court pointed us to a

14  case, <u>Adams versus Gould</u>.  Rule 59 governs motions to alter a

15  judgment after there's been a final judgment.  Here, there

16  was no final judgment with respect to either of the

17  defendants.  The Mueller defendant's motion for summary

18  judgment was granted, however, there were still claims

19  pending against Eclipse.  The Eclipse motion was decided at a

20  later point in time, after our motion for leave to amend was

21  filed.

22          So, for example, if for whatever reason the Court

23  had granted Mueller's motion for summary judgment but denied

24  Eclipse's motion for summary judgment, there would have been

25  no final judgment.  We could not have filed any appeal from

4

1    the Mueller decision until the case was already resolved.

2         There was a similar case, which I actually just

3    found yesterday.  It's a 2010.  It is an Eastern District of

4    Pennsylvania case.  The case is Cohen, C-O-H-E-N, versus

5    Prudential Insurance Company, the cite is 2010, U.S. District

6    Lexis, 32166 and it's March 29, 2010 from Eastern District of

7    Pennsylvania.  And there, the plaintiffs sought to amend a

8    pleading after a Rule 12 dismissal of some of the defendants,

9    but not all of the defendants.  The defendants who were

10   dismissed argued that the plaintiff should have filed a Rule

11   59 motion and the court said no, because -- because the order

12   did not dismiss of all parties and all claims, that it was

13   appropriate to file under Rule 15 and not Rule 59.

14        THE COURT:  In that case, that you just cited, the

15   motion to amend, did it seek to amend the claims against the

16   party that had been dismissed pursuant to Rule 12(b)?

17        MS. FREY:  Yes.

18        THE COURT:  Okay, so that case was -- did the case

19   then go up to -- no, it didn't go up to the 3rd Circuit.

20        MS. FREY:  Correct, it was the Eastern District

21   case.

22        THE COURT:  Okay.

23        MS. FREY:  And the court did permit them to amend.

24   Well, it said that they were permitted -- the filing under

25   Rule 15 was appropriate and that Rule 59.

5

1          THE COURT:  So is it your contention that the

2     standard of review with regard to this motion is under Rule

3     15 and not 59 and not Adams versus Gould?

4          MS. FREY:  Well, our position is that we've properly

5     filed under Rule 15.  The Adams case is also a little

6     different than our case in that the Adams case involved a

7     judgment which dismissed all defendants.  And again, that's a

8     little different than our case, where you still had claims

9     pending against a defendant, but I think, in the Adams

10    case --

11         THE COURT:  But here's, maybe we have a disconnect

12    here.  Let's straighten out the chronology.  The chronology

13    is that on April 27, 2010, Mueller's motion for summary

14    judgment was granted.  A week or two later, you filed your

15    motion to amend?

16         MS. FREY:  Correct.

17         THE COURT:  After that, a few weeks after that,

18    Eclipse's motion for summary judgment was granted.

19         MS. FREY:  Correct.

20         THE COURT:  Then the case goes up to the 3rd

21    Circuit.  The 3rd Circuit says the motion to amend should

22    have been decided.  You re-filed your motion to amend.  Are

23    you suggesting that with regard to the current motion to

24    amend that was filed on June 15, 2011, you should step into

25    the shoes as if we were here in May, 2010?

1            MS. FREY:  I do believe it.  I think that's what's

2    appropriate on remand.

3            THE COURT:  Because now, the motion that's before

4    this Court, isn't it correct, that the motion presently

5    before this Court is -- was filed after both defendants had

6    been dismissed?

7            MS. FREY:  After their dismissal had been affirmed

8    by the 3rd Circuit, yes, that is correct.

9            THE COURT:  All right and after Judge Kugler

10   dismissed them?

11           MS. FREY:  Right.

12           THE COURT:  Okay.  Why shouldn't the Court decide

13   the June 15, 2011 motion based on the current posture of the

14   case?  Why does the Court have to go back in time and view

15   the motion as if it was filed on May 7, 2010?

16           MS. FREY:  Well, if you look at what the 3rd Circuit

17   said, what the 3rd Circuit said is the previous motion to

18   amend was not decided on the merits.  It was denied as moot,

19   because --

20           THE COURT:  Correct.

21           MS. FREY:  -- it was after the judgment.

22           THE COURT:  Incorrectly decided.

23           MS. FREY:  So the 3rd Circuit said is that the

24   District Court should have considered that motion back when

25   it was filed in May.  It should not have just denied it as

1   moot.

2           THE COURT:  Okay, how about this hypothetical?  Even

3   though your motion was filed on May 7, 2010, as of May 26,

4   2010, both defendants were out of the case.

5           MS. FREY:  Correct.

6           THE COURT:  The 3rd Circuit says, I made a mistake,

7   I should have decided that motion.  So let's assume one week

8   after May 26, 2010, we had oral argument.  Say we're now June

9   1st.  Let's go back in time, it's June 1, 2010.  Both

10  defendants are out of the case, even though the motion was

11  filed before Eclipse was dismissed.  Would you then say to

12  me, Judge, even though it's June 1st, we have to look at how

13  things stood on May 7th?

14          MS. FREY:  Well, I believe that's kind of where the

15  Adams case comes in and I don't think, while I think Adams is

16  distinguishable in that involved a -- dismissed of all

17  defendants, when you look at the Adams case, the Adams court

18  doesn't say it must be under Rule 59 or it must be under Rule

19  15.  They kind of took a hybrid approach --

20          THE COURT:  Correct.

21          MS. FREY:  -- and said when you have a situation

22  where there's been a motion to amend after a dismissal, this

23  is what you need to look at and what they came up with is

24  their test was first you look, does the Complaint state a

25  cause of action.  Does the prior ruling bar the claim?  Does

1    the Statute of Limitations bar the claim and then you look to

2    see if there was any undue delay prejudice, et cetera.  Our

3    motion does all of that.

4            THE COURT:  I don't disagree.

5            MS. FREY:  So --

6            THE COURT:  Because my next question to you is going

7    to be this.  You say I should apply a Rule 15 standard.

8    Undue delay, bad faith, futility, right, the three prongs.

9    How does Rule 15 differ from what the 3rd Circuit said in

10   Adams versus Gould, does it differ?

11           MS. FREY:  It doesn't differ a whole lot because

12   that futility argument --

13           THE COURT:  Does it differ -- does, substantively,

14   does it make any difference?

15           MS. FREY:  No, I don't believe it does.  I think the

16   futility argument of Rule 15(a) goes to does the Complaint

17   state a cause of action, is it barred by the Statute of

18   Limitations.

19           THE COURT:  The only disagreement here is defendant

20   saying that this heightened standard under Rule 59 applies

21   and you say it doesn't and the 3rd Circuit in Adams versus

22   Gould said it doesn't.

23           MS. FREY:  Right.

24           THE COURT:  So let's stop right there, because this

25   is the first step.  Do we disagree that Adams versus Gould

9

1    controls or that Rule 15 controls because, I think, plaintiff

2    and the Court are of the same mind set that there's no

3    substantive difference if the Court applies pier of Rule 15

4    analysis or the hybrid in <u>Adams versus Gould</u>.  What do the

5    defendants think about that?

6          MR. EBLEN:  Your Honor, here is where our

7    disagreement comes in on the issue.  I agree that that's the

8    reading of the <u>Adams</u> case.  That's more or less what they

9    did, is they merged the two standards and said under the

10   facts of that case, the factors or inquiries to be considered

11   are going to be the same.  Here's where I think we part views

12   with plaintiffs on reading the body of law, including the

13   text of the rule and the mandate in this case.  The mandate,

14   in this case, from the 3rd Circuit was, at least, as to

15   Mueller, potentially to Eclipse as well, if the posture is

16   correct as you have put it.  You are to evaluate the case

17   under Rule 59 and under Rule 59, the presumption of the

18   liberality of free amendments goes away and it cites to the

19   <u>Ahern</u> case, which is a 2002 case.  That is more recent,

20   obviously, than the <u>Adams</u> case, which was decided in 1984.

21         The <u>Ahern</u> case goes into a little bit deeper

22   analysis of the distinction between Rule 59 and 60 and Rule

23   15 and says that under the right circumstances, when you have

24   a post-judgment amendment motion that is filed, if you were

25   to treat that motion just like you would under Rule 15, under

1    the liberal pleading standard, you would basically erode out

2    the text of Rule 59 and Rule 60.  And while it doesn't go

3    into any deep discussion of the Adams case, it's a bit

4    difficult to reconcile those two propositions of law.

5          Because if, on one hand, you're looking at Rule 59

6    in the most recent case, where they say you can't defer and

7    apply the liberal pleading factors that are in Rule 15, but

8    at the same time, draw back on the Adams case from 1984 to

9    say it's just all one and the same.  Then I don't think

10   there's consistency between those two bodies of law and I

11   don't think there's consistency with what the Court said to

12   do as far as evaluating the pending motion before the Court

13   in this case.  Which was, as to the Rule 59 inquiry, the

14   liberality of pleadings has to go away.

15         If that's its statement in how this case should be

16   reviewed and then you go back to the 1984 case and say it's

17   all one in the same, then the mandate of the opinion from the

18   3rd Circuit, in this case, there's a logical disconnect

19   between what it's instructed this Court to do.  And

20   understand that that's the nature of the beast in this

21   profession, is the law is not always clear.  But I have a

22   hard time reconciling that 2002 3rd Circuit case, that says

23   if you review this under the same standard, you've eroded

24   Rule 60 and Rule 59, with what the Court has identified in

25   the Adams case.

1          And I would say to that point, that what appears to

2    have driven the 3rd Circuit in the <u>Adams</u> case is the notion

3    that it was a very, very strange procedural posture and a far

4    different set of facts than what we have here.  In that

5    particular case, that case went up on a 1292 certification

6    because the Supreme Court had recently changed a more

7    complicated body of law and the outcome of the 3rd Circuit

8    appeal basically said the outcome of the arbitration is

9    affirmed in what the union did in that particular case, was

10   valid under the contract.  Which then brought to life an

11   alternative theory that had been alleged or brought up all

12   along in the case, but just hadn't formally been asserted.

13   And that alternative theory was if the union had the right

14   for vested beneficiaries of a pension plan, has the right to,

15   in essence, settle out our claims, well, we're not going to

16   get to recover, then we think you've reached fiduciary

17   obligation.

18          So there is an alternative theory that was not fully

19   developed, that had been raised and it was an interlocutory

20   appeal that removed all other theories in the case.  And so

21   it really was an extraordinary and I think the opinion used

22   the language, there was an extraordinary procedural

23   circumstances that drove them to more liberally look at what

24   otherwise would be an amendment of a judgment under Rule 59.

25          THE COURT:  What's the standard that you think

1  should apply?

2          MR. EBLEN:  I think, under these circumstances, you

3  look to the three factors that are driven from the text of

4  Rule 59.  So I think it's a --

5          THE COURT:  What are they?

6          MR. EBLEN:  It's whether or not there's been some

7  sort of intervening change in law.  Whether or not there's

8  been some sort of factual change in the record and whether or

9  not there's extraordinary circumstances that would otherwise

10 justify what is presumed to be a final judgment.  And there's

11 been no citation nor could there be, because in the record or

12 otherwise, of a basis that would justify that standard.

13 Because, in essence, what we've done here is that the

14 plaintiffs in this case, got a preview of an opinion that

15 they did not like, that dismissed their case and the parties,

16 for close to a year, worked up the case on that basis.  They

17 see the opinion, they don't like it, they try to amend around

18 it by merely taking and packaging what were warranty claims,

19 taking the language of the warranty and instead of framing it

20 as a warranty complaint, let's use this as a representation

21 that's the fact predicate for a CFA claim.

22          And so under those circumstances you've got greatly

23 divergent facts from the Adams case and you're also dealing

24 with a body of law that when you take those facts and you

25 take the Ahern case and the repeated statements from the 3rd

1   Circuit, that after they're is a judgment, the liberality of

2   pleadings goes away.  I think the record puts this in the

3   camp where you should strictly evaluate the Rule 59 standard,

4   which in fact, was the mandate.  The 3rd Circuit cited the

5   Adams case in its opinion and very easily could have then

6   drawn the proposition to simplify matters.  But since the

7   standards are the same under this posture, they evaluate all

8   of it under the factors of Rule 15.  It's all the same

9   analysis for both parties.  But after citing the Adams case,

10  it stopped and didn't say that and instead, earlier in that

11  same paragraph, had said it's a tougher standard you have to

12  meet, since this was filed

13  post-judgment.

14          So we would urge the Court to strictly follow the

15  mandate of the 3rd Circuit in this case, which obviously, is

16  the most recent and direct pronouncement under the difference

17  between the two standards and is specific to this.

18          THE COURT:  So under your analysis the Court would

19  be applying a different standard of review to Eclipse and

20  Mueller, because when this motion was filed, one had already

21  been dismissed on summary judgment and one had not been

22  dismissed on summary judgment.  Does that make any sense?

23          MR. EBLEN:  I think there's two answers to that

24  question, your Honor.  There's the possibility that that

25  would be the outcome.  That wouldn't be the outcome if, as

14

1    the Court analyzed through the process of how this motion

2    should be construed, if the refiling of the motion in June of

3    2011, means that you are deciding this case against the

4    backdrop where there's a final judgment as to both

5    defendants, which I think is correct.  And in that case,

6    we're both under the same standard.

7            I think, even if you go back in time, the direction

8    the Court was going in talking through the posture of the

9    case.  At the time, you are going to enter an order or make a

10   substantive ruling on this motion, back in June of 2010 even,

11   you're looking at a case where there's a final judgment

12   against both parties.  Both parties are out of the case and

13   the case is done.  So isn't the first step that the Court has

14   to do, even under that inquiry, is re-open the judgment.  I

15   mean, that is the initial step, at that stage that you have

16   to go to, in order to evaluate the case.

17           THE COURT:  Isn't that what happened in Adams?

18           MR. EBLEN:  Sort of, I mean, that's sort of what

19   happened.  But what was happening in Adams, was the

20   plaintiff, as I read the case, is trying to add a claim

21   against the union, which I didn't even read to be a party

22   then to the first appeal.  At first, it was the pension fund

23   and the trustee that they had claims against.  And they, all

24   along, had had an alternative theory that hadn't been fleshed

25   out, that had been asserted in prior pleadings and it was

1    truly an alternative theory from the standpoint that we've

2    got this moving body of case law and changes from the Supreme

3    Court.  And unless and until the Court, as a matter of law,

4    finds that the union had the right to negotiate and enter

5    this agreement post-arbitration as against all parties.

6         THE COURT:  It sounds to me like you're unduly

7    complicating the ruling in Adams.  The 3rd Circuit in Adams

8    says our scope of review turns on the interrelationship

9    between the scope of review applicable to 59(e) motions and

10   that applicable to 15(a) motions.  It just seems to the Court

11   that's what we have here.

12        MR. EBLEN:  I agree there's a parallel.  I mean,

13   there's no doubt a parallel in the sense that you've got a

14   post-judgment formal motion that's being brought.  I mean,

15   the problem I have is going back to where I was from the

16   start, which is the most recent published pronouncement from

17   the 3rd Circuit in the Ahern case.  The court clearly lays

18   out why you can't treat the motions identically, because

19   otherwise, you eviscerate the text of those two rules.  And

20   the holding didn't turn on the distinction because it said

21   the Complaint was so clearly futile that, if it's futile

22   under Rule 15, that's a valid basis to deny both motions,

23   both the Rule 59 and the Rule 15.

24        But it still seems like, based on that and the

25   discussion that, well, there has to be a difference, is one

1   is construed liberally and one clearly isn't.  That in the

2   proper case, you still have to go through both steps, because

3   one, you have to reopen the judgment and until you reopen the

4   judgment, you can't consider whether to allow the amendment.

5   So that's where I have trouble reconciling what happened

6   here, what the 3rd Circuit said here, in this case and Ahern

7   and then going back to the analysis in the Adams case.

8              THE COURT:  Okay, thank you.  Okay, we dealt with

9   the standard of review issue.  Let's now get to the substance

10  of the arguments.

11             MS. FREY:  Okay.  The first issue is that the Adams

12  court looked at and again, I think, under either 15 or 59, is

13  whether the Complaint states a cause of action and this is

14  addressed in pages four to seven of our motion.  One of the

15  issues that is raised is whether or not the consumer product

16  applies to an entity such as South Jersey Gas.  The act

17  states that any person who suffers a loss may bring an

18  action.  The term person, is a defined term in the act and is

19  defined to include businesses, corporations, et cetera.

20             THE COURT:  Was this transaction between South

21  Jersey and the defendants covered by the UCC?

22             MS. VIALA:  I would just like to comment that I

23  believe under the 3rd Circuit affirmation of the summary

24  judgment, that that's clearly been decided yes.

25             THE COURT:  Do you disagree?

1          MS. FREY:  Well, the 3rd Circuit did affirm under

2    the breach of warranty issues and said it was the UCC did

3    apply.

4          THE COURT:  Okay.

5          MS. FREY:  With regard to the Consumer Fraud Act,

6    the courts in this state have consistently held that

7    consumers or that entities such as South Jersey Gas are

8    entitled to sue under the Consumer Fraud Act.  And in fact,

9    in the Hundred East case, which is cited in our brief, the

10   court there said it would contravene the purpose of the act,

11   in the plain language of the act, which again defines persons

12   to include a business, to exclude businesses from being able

13   to bring the Consumer Fraud Act.

14         The cases cited by the Eclipse defendants are very

15   distinguishable from our case. They involve cases where a

16   business purchased goods and then turned around and resold

17   them to the public.  That's not what happened here.  South

18   Jersey Gas was a consumer and they --

19         THE COURT:  What happened here?

20         MS. FREY:  What happened here, South Jersey is a

21   consumer.  They purchased valves from Mueller and Eclipse.

22   South Jersey then used those valves in the provision of

23   services.  They did not resell those valves to the public.

24         THE COURT:  How do we know that?

25         MS. FREY:  Well, the valves remain the property of

1    South Jersey Gas.

2              THE COURT:  How do we know that?  Is that in the

3    Complaint?  Does the Complaint --

4              MS. FREY:  I believe that is in the proposed Amended

5    Complaint.

6              THE COURT:  Take a look.

7              MS. FREY:  That we used those to provide -- the

8    valves were used to service.

9              THE COURT:  Does it say anything about who owns it?

10             MS. FREY:  I don't know if it says specifically as

11   that, but I believe it states that they were used to provide

12   services to residents.

13             THE COURT:  Right.  Is it a relevant consideration

14   for the Court's decision who owns these valves?  And if so,

15   is there anything in the Complaint and proposed Amended

16   Complaint that addresses the issue?  There's a lot of

17   discussion in the briefs about things outside the record.

18   You pointed out the citation to the deposition testimony, but

19   there's also reference in your brief, as to who owns these

20   valves, et cetera, et cetera.  I could be wrong and if I am,

21   I'd like to know, but I don't see anything in the Complaint

22   about who owns these valves, whether these valves were sold

23   to the consumer, whether they had a right to use them,

24   whether you passed on the purchase price of these valves to

25   the consumer.  I didn't see anything in here to that effect,

1    so right now I don't know who owns these valves.

2              MS. FREY:  No, I would agree with you.  It's not

3    specifically spelled out in that detail in the proposed

4    Amended Complaint.  What it says is that South Jersey did

5    purchase the valves from the defendants, to install them at

6    our customer's home.

7              THE COURT:  Correct.

8              MS. FREY:  And provide service to those customers.

9    And I believe that is sufficient to plead a case, at the

10   pleading stage, under the Consumer Fraud Act.  And that we

11   would qualify and again, the defendants have not cited to any

12   cases which have held that, you know, there's been no

13   pronouncement from the New Jersey Supreme Court, for example,

14   that businesses are not entitled to protection under the

15   Consumer Fraud Act.  Clearly they are, the plain language

16   says any person and person is defined to include businesses.

17             Beyond the issue of whether the act applies, the

18   defendants have alleged that we haven't pleaded sufficient

19   facts to support our claim.  The elements we must plead are

20   unlawful conduct on the part of the defendant and

21   ascertainable loss and a causal relationship between the two.

22   Our proposed Amended Complaint alleges that we purchased the

23   valves, we were promised that the valves were of a certain

24   quality and that the defendants misrepresented the quality.

25             THE COURT:  Does it say who promised the -- let's

1    clarify.  Plaintiff's Consumer Fraud Act claim, are you

2    claiming that there was an affirmative misrepresentation?

3    Are you claiming there was an omission or are you claiming

4    both?

5              MS. FREY:  We are claiming that was a

6    misrepresentation, there were representations made concerning

7    the quality of these products and that those

8    misrepresentations were false.

9              THE COURT:  Are you, as part of your Consumer Fraud

10   Act claim, are you alleging that there was any omission?

11             MS. FREY:  Omission of facts concerning the actual

12   quality of these valves.

13             THE COURT:  Did you allege who made these

14   representations?

15             MS. FREY:  You mean a specific person or the entity?

16             THE COURT:  Person?

17             MS. FREY:  No, we have alleged that the Eclipse

18   defendants and then a separate allegation that the Mueller

19   defendant.

20             THE COURT:  When?

21             MS. FREY:  In the '80s and '90s, when we purchased

22   the valves.

23             THE COURT:  To whom?

24             MS. FREY:  To South Jersey Gas.

25             THE COURT:  You're alleging that these

1    representations were made to South Jersey Gas?

2             MS. FREY:  Yes.

3             THE COURT:  Where does it allege that?

4             MS. FREY:  I'm just looking quickly at paragraph 32,

5    "Contrary to the representations provided by defendants, the

6    valves failed to meet the promises made to plaintiff."

7             THE COURT:  Does it say that the representations in

8    paragraph 30 were made to the defendants?

9             MS. FREY:  To the plaintiff.

10            THE COURT:  Excuse me, to the plaintiff.  Does it

11   say that the representations made in paragraph 30 were made

12   to the plaintiff?

13            MS. FREY:  I think if you look at the Complaint as a

14   whole, which in the Pollak (ph) case, which is an April, 2011

15   case from this Court, where the Court said you need to look

16   at the Complaint, as a whole and not as also a Consumer Fraud

17   case, where similar allegations were made.  The Complaint

18   alleges that we purchased these valves, that Eclipse and

19   Mueller provided these valves and that they represented that

20   the valves were free from defects.  They made certain

21   promises, such as designed to meet your needs, guaranteed

22   performance, those types of representations.  So, I believe,

23   reading and we also allege that these promises were made to

24   us.  And I believe, if you read the Complaint as a whole,

25   yes.

1          THE COURT:  Who is us?

2          MS. FREY:  I'm sorry, South Jersey Gas.

3          THE COURT:  Who?

4          MS. FREY:  A specific person?  Don't know.

5          THE COURT:  Were these representations made orally

6    or in writing?

7          MS. FREY:  I believe in, well, it's not -- I don't

8    believe we say in the Complaint.

9          THE COURT:  Do you think the defendants are entitled

10   to know that?

11         MS. FREY:  Well, I believe under the pleading

12   standards, we are in a notice pleading jurisdiction and that

13   we have sufficiently.  That's the purpose of discovery and

14   again, we're at the pleading stage, we're not at a summary

15   judgment stage.  And I believe if you look at the Pollak

16   case, which is in our brief, they are very similar

17   allegations.  The plaintiff alleged the defendant committed

18   an unconscionable act, misrepresentations, she sustained

19   damages and the Court said, "Taken together" that was

20   sufficient and that's at this stage.

21         THE COURT:  The Pollak case, was that Judge

22   Thompson's case from 2011?

23         MS. FREY:  Yes, April, 2011.

24         THE COURT:  Wasn't there a specific letter in that

25   case that they were referring to?

23

1      MS. FREY:  I don't have that in front of me, I'm not

2  sure.

3      THE COURT:  Well, that's my recollection of the

4  case.  Here, your client is alleging these are the

5  affirmative misrepresentations that you're relying upon to

6  support your Consumer Fraud Act claim.  I'm asking you when

7  they were made.  The best you can tell me is the '80s or

8  '90s.  I'm asking to whom they were made.  You can't tell me

9  a particular person.  I'm asking if they were orally or in

10  writing and you can't tell me that either, is that correct?

11      MS. FREY:  I believe they were both oral and written

12  and for example, in paragraph 30, we have cites -- they are

13  quotes from a -- it's a particular document, which were

14  produced in discovery from the defendant.

15      THE COURT:  That's what I'm asking you.  Are the, I

16  could be wrong, if these were made orally or in writing, what

17  can you tell me about that?

18      MS. FREY:  I can tell you that they were both, we

19  allege both.  There were general promises of the condition of

20  the valves and then, as we set forth in paragraph 30, the

21  quotations come from written materials.

22      THE COURT:  Okay.  So are you telling the Court that

23  all -- everything in quotations in paragraph 30 came from a

24  writing?

25      MS. FREY:  Yes.

24

```
 1          THE COURT:  Okay, are you also telling me that there
 2   were -- do you know if there were oral misrepresentations?
 3          MS. FREY:  We have alleged that there
 4   representations.
 5          THE COURT:  Where --
 6          MS. FREY:  I don't believe we specifically say oral,
 7   but when we say promises --
 8          THE COURT:  Where is that alleged?
 9          MS. FREY:  -- again, we have not specifically said
10   there were oral representations.  We have said there were
11   representations that there were promises made beyond
12   paragraph 30.
13          THE COURT:  But doesn't 9(b) require that?
14          MS. FREY:  Well, 9(b) also relax where there's --
15   you have a defendant who has the information and then given
16   the particular procedural posture of this case, where we've
17   had difficulty information --
18          THE COURT:  You're the plaintiff.
19          MS. FREY:  Right.
20          THE COURT:  Don't you know the representations made
21   to your client?  It's not like this is brand new.  This case
22   has been going on a year or so.
23          MS. FREY:  Right.
24          THE COURT:  Or how many years, however many years.
25   Are these the same representations that plaintiff relied upon
```

1    for its breach of warranty claim?

2              MS. FREY:  I believe there are similar ones, yes.

3              THE COURT:  Are they the same?

4              MS. FREY:  Yes.

5              THE COURT:  Okay.  So every one of the

6    representations in paragraph 30, plaintiff also relied on the

7    same exact representations for its breach of warranty claim,

8    is that correct?

9              MS. FREY:  Yes.

10             THE COURT:  Here is my question to you.  Does every

11   breach of warranty claim, is that equivalent to a Consumer

12   Fraud Act violation?

13             MS. FREY:  I don't believe that's probably the case

14   in every single situation, because obviously, there are

15   different elements to a breach of warranty than there are to

16   a consumer fraud case.  There may be overlap between the two

17   and in this particular case, there clearly is.

18             THE COURT:  So here you have alleged that these,

19   well, here it's coming out on oral argument that these

20   representations were warranties made by the defendant.

21   Plaintiff alleges defendant breached these warranties. Let's

22   take that as a given, those are plaintiff's allegations.

23             MS. FREY:  Okay.

24             THE COURT:  Does that, what I've just stated, make

25   out a Consumer Fraud Act claim?

1          MS. FREY:  Yes.

2          THE COURT:  Why?

3          MS. FREY:  Again, what we have alleged here is the

4    same conduct, obviously, it's the same facts no matter what

5    type of claim that you are making.  But these representations

6    under the Consumer Fraud Act, the defendant -- prohibits

7    misrepresentations concerning consumer products or

8    merchandise is, I believe, the actual term, that the act

9    uses.  And yes, I do believe that in certain situations, such

10   as this one, it can constitute a breach of warranty or it can

11   constitute a Consumer Fraud Act.

12          The difference here and why the 3rd Circuit affirmed

13   the dismissal is because there was a Statute of Limitations

14   issue with the breach of warranty claim, which is not present

15   with the Consumer Fraud Act.  The Consumer Fraud Act has a

16   six year Statute of Limitations and unlike with breach of

17   warranty, New Jersey has adopted the discovery rule to apply

18   to Consumer Fraud Act claims.

19          THE COURT:  The defendants have cited case law that

20   says, which I don't think you addressed, that that is a

21   breach of warranty, is a Consumer Fraud Act violation.  That

22   there must be "aggravating circumstances."  Are there any

23   aggravating circumstances pleaded in this proposed Amended

24   Complaint?

25          MS. FREY:  Well, we have alleged the language of the

1    act that there were misrepresentations, that there was an

2    unconscionable act and again, in the Pollak case, the court

3    found that those allegations were sufficient.  While not, I

4    would agree that not every breach of warranty is going to

5    equal a consumer fraud violation, in certain situations, such

6    as this case, where we've alleged the representations about

7    gas valves, which are placed on resident's homes and pose a

8    risk to the public.  I believe in certain situations, breach

9    of warranty under the same set of facts, can constitute

10   Consumer Fraud Act violations.

11          THE COURT:  What makes your proposed Complaint any

12   different than every other breach of warranty claim?  In this

13   case, you've taken the same exact allegations that you're

14   relying upon for your breach of warranty claim and said

15   that's a Consumer Fraud Act violation.  Why can't every

16   plaintiff, in every case, do that and therefore, every breach

17   of warranty case would become a Consumer Fraud Act claim.

18   What's different?  If you accept the notion of the case law

19   that not every warranty breach is a Consumer Fraud Act

20   violation, what then is different here then every other

21   breach of warranty case?

22          MS. FREY:  Well, again, you know, we have alleged

23   that there was the knowing concealment here.  That they knew

24   that these valves were not, you know, of the quality that

25   they said they were.  And again, that's not going to be, you

1    know, a warranty is just that they weren't -- you don't have

2    that knowing aspect, which we have alleged here.  And again,

3    this is a valve that was purchased by us and installed on

4    over 70,000 homes and because of the faulty valves, there

5    have been damages sustained and it imposes a risk to the

6    greater public.  And I do think that that takes it beyond a

7    normal breach of warranty claim even though the same

8    representations may underlie the claim.  It's the knowing

9    misrepresentation, it's the unconscionable act, that is what

10   takes it beyond a normal breach of warranty claim.

11          THE COURT:  Have you alleged any facts to support

12   your claim of knowing concealment?

13          MS. FREY:  I believe we have sufficiently pled the

14   facts under the law.  You need to prove --

15          THE COURT:  What facts have you alleged?

16          MS. FREY:  We have alleged that the promise that the

17   valves were of a particular quality.  That they weren't and

18   that they knew that.

19          THE COURT:  What facts have you alleged that

20   defendants knew that?

21          MS. FREY:  Well, again, we're at the notice pleading

22   stage and even within the Rule 9(b) research is, again, I

23   believe that our Complaint, based on what was pleaded in the

24   Pollak Complaint, sufficiently alleges.  If you look at --

25          THE COURT:  Under Twombley and Ichbal, is that the

1    sort of allegation that the Court can accept?  The bare

2    allegation that there was a knowing concealment.  Under

3    <u>Twombley</u> and <u>Ichbal</u>, am I bound to accept that?

4         MS. FREY:  Well, under <u>Twombley</u> and <u>Ichbal</u>, it's

5    whether or not the Complaint, on its face, states a plausible

6    cause of action.  And I believe, as pleaded, this Complaint

7    does set forth a plausible cause of action under the Consumer

8    Fraud Act and under the guidelines to New Jersey Courts as to

9    what is required to plead such a claim.  Again, it's unlawful

10   conduct, ascertainable loss and a causal relationship.

11        THE COURT:  Have you alleged that your client relied

12   on these representations in purchasing these valves?

13        MS. FREY:  I don't believe that is in here and I

14   don't believe that that's an element of the Consumer Fraud

15   Act.

16        THE COURT:  Do you know of anyone who received any

17   of those representations and anymore precision than they were

18   made by somebody in the '80s and '90s?

19        MS. FREY:  Not yet.  That's why we're at this stage

20   and you know, if we're granted leave to amend, that will be

21   explored through discovery.  To understand the procedural

22   pressure, I mean, this was not a case that languished for

23   years and years and years and we just all of a sudden,

24   somebody filed a motion for summary judgment.  These were for

25   trial motions, which then converted to summary judgment

30

1    motions.  The case was filed in July of 2009.  The motions

2    were refiled in April of 2010, so not even a year into the

3    case.  And we had some difficulty getting discovery materials

4    and that information's in the record.  We subpoenaed records

5    and had other counsel saying that you shouldn't respond to

6    those and so we didn't have, it's not like we have years of

7    discovery to learn this information.  We're at the stage we

8    are now, two years after filing suit, but because we've been

9    on the appellate process, that's what delayed and obviously,

10   we weren't going to go through discovery during the appellate

11   process.

12        THE COURT:  Judge Kugler ruled and it was affirmed

13   by the 3rd Circuit, that there was a one-year warranty for

14   the representations that are made in paragraph 30, correct?

15        MS. FREY:  Correct.

16        THE COURT:  Those representations were made, I mean,

17   I think my recollection was and you can correct me if I'm

18   wrong, that the last valves were sold around '93 or '94?

19        MS. FREY:  I believe that's correct, yes.

20        THE COURT:  So just for the sake of argument.

21        MS. FREY:  Mm-hmm.

22        THE COURT:  This may not be precise, let's say in

23   1995, the breach of warranty expired.  Here we are more than

24   ten or 15 years later and you're saying that the same exact

25   representations give rise to a Consumer Fraud Act claim,

1   correct?

2           MS. FREY:  That is exactly what I'm saying.

3           THE COURT:  What does that do to the one-year breach

4   of warranty?

5           MS. FREY:  Well, they are not the same causes of

6   action and there are different damages available under breach

7   of warranty versus a Consumer Fraud Act.  They're not the

8   same causes of action, we're just extending one.  And the New

9   Jersey Courts have determined that with respect to consumer

10  fraud actions, the discovery rule is permitted.  There was a

11  case in our brief, NN&R, which is a 2005 District of New

12  Jersey case.

13          THE COURT:  You know, it's interesting, they haven't

14  contested that.

15          MS. FREY:  No, they have not contested --

16          THE COURT:  So where --

17          MS. FREY:  -- the Statute of Limitations issue.

18          THE COURT:  -- they have not contested the Statute

19  of Limitations issue.

20          MS. FREY:  That is not addressed in our brief.

21          MS. VIALA:  Well, I did --

22          THE COURT:  Hold on, Counsel.  What we're focusing

23  on is the Consumer Fraud Act violation and what I'm coming

24  back to is what seems to be the plaintiff's argument that if

25  you have a breach of warranty, in this case, as it's pled,

32

1   that's a Consumer Fraud Act violation.  I'm just trying to

2   get my arms around that argument, because it just seems like

3   an easy way to get around a warranty.

4            MS. FREY:  Well, here's the situation that you have

5   in this case, it's a little unique.  Warranties, there are

6   warranties and warranties are upheld because, generally,

7   products, if they're going to fail, will fail within the

8   particular warranty period.  Here you have an item, this

9   valve, which is, the defendants agree is not something that

10  is used on a daily basis.  I've been in my home 11 years, my

11  outside valve has never been touched in those 11 years and

12  the four years before I bought it, I don't know that it was

13  ever used.

14           THE COURT:  Do you know if there is one?

15           MS. FREY:  I don't even know.  It's not even

16  something that I look at.  I know where my heater is and

17  that's about it and I know they check it and I get a bill.

18           THE COURT:  Do you live in New Jersey?

19           MS. FREY:  I live in Pennsylvania, actually.

20           THE COURT:  Oh, so if you were in New Jersey, you

21  might have looked at the valve.

22           MS. FREY:  I would check.

23           THE COURT:  Because you don't want your house to

24  explode, do you?

25           MS. FREY:  Exactly, exactly.  But you know and I

33

1    think what the Consumer Fraud Act is that it kind of covers

2    the gap for those actions where, yes, there's a warranty and

3    those are issued.  But you might have a product, such as

4    these valves, which you don't discover until a later date.

5    And so the Consumer Fraud Act does provide protection to

6    those consumers who may have run out of a warranty, but they

7    still have a product which has failed.  Which, you know,

8    there were misrepresentations about that product, so I think

9    that that -- the Consumer Fraud Act kind of acts as a gap to

10   cover that.  And again, you know, the New Jersey Courts, as a

11   policy, decided that that discovery rule will apply to

12   Consumer Fraud Acts, while it does not apply to the warranty

13   action.

14        THE COURT:  I asked you a lot of questions.  There

15   might be some other things you wanted to say and I want to

16   give you the opportunity to say them.

17        MS. FREY:  Well, if the Court is satisfied as far as

18   whether the Complaint states an action and the Statute of

19   Limitations issues, I can move to the delay or if you had

20   anything else.

21        THE COURT:  Well, I don't think you need to go to

22   the Statute of Limitations issue until we hear from

23   defendant.

24        MS. FREY:  All right.

25        THE COURT:  You'll have the last word.  They didn't

34

1    raise the issue, at least, as far as I read the papers.

2              MS. FREY:  Right.

3              THE COURT:  In their briefs, they haven't alleged

4    that the discovery rule does not apply to a CFA claim.  So if

5    you want to address that, why don't you save that for

6    rebuttal.

7              MS. FREY:  Okay, okay.

8              THE COURT:  Any other arguments you have?

9              MS. FREY:  Well, the Rule 15(a) factors and what

10   Adams also considered is the last, if you have passed that

11   hurdle, do you have a cause of action and is it -- does it

12   pass the Statute of Limitations, is whether there has been

13   any undue delay, prejudice or bad faith and Adams is

14   actually, particularly insightful in this case and helpful.

15   There, as the plaintiff sought to amend after a summary

16   judgment grant, the court held that the plaintiff could have

17   brought that particular claim at the time the original

18   Complaint was filed.  And they also stated that this

19   alternate claim was based on the same set of facts as alleged

20   in the original Complaint.

21             Under those circumstances, the court still found

22   that there was no undue delay in waiting to file the Amended

23   Complaint and said, here, even assuming that without

24   conceding that we could have brought this claim when it was

25   originally filed.  But assuming that we could have brought

1    the Consumer Fraud Act at the time the original Complaint was

2    filed, there's still not undue delay.  The mere passage of

3    time and again, we're not even talking about a whole lot of

4    time.  The action was filed in July.  Our motion to amend was

5    filed in May.  So less than a year after the filing of the

6    original Complaint, when discovery was just beginning.  The

7    Adams court, there's a section that I wanted to cite to it.

8    They stated, "where the legal theory of a Complaint is

9    rejected by the District Court, on a motion for summary

10   judgment, but where an alternative theory has been raised,

11   which on the same facts is legally sufficient, it would be

12   unusual for the District Court not to allow plaintiff leave

13   to amend because of undue delay."

14          And I think that's the situation where we have here,

15   of counsel for Mueller, when he was speaking earlier, made a

16   comment about, you know, you're allowing somebody to get a

17   second bit of the apple.  Well, in the Adams case they

18   condone that and one of the reasons they did is that this

19   isn't a case where the defendant had fully litigated the

20   issue and there are other acts to be re-litigated on the

21   issue.  In fact, they avoided litigation on the issue because

22   this was dismissed at an early stage in the proceedings.

23          Based on the same similar facts, the Adams court

24   found there was no prejudice to the defendant.  It was an

25   early stage of the facts, again, they didn't litigate the

1  facts.  They had avoided litigating the facts.  And it's not

2  a case where somebody goes to trial on one theory and loses

3  at trial and then just says, well, I have this other theory,

4  let's do it all over again.

5          THE COURT:  Okay, anything else, Counsel?

6          MS. FREY:  Not at this time.

7          THE COURT:  Thank you, you'll get the last word.

8          MS. FREY:  Okay.

9          THE COURT:  I don't know who wants to speak for the

10  defendants first.

11          MS. VIALA:  I guess I can go ahead.

12          THE COURT:  For?

13          MS. VIALA:  Jeanette Viala on behalf of the Eclipse

14  defendants.  First thing is that once thing, at least, that

15  was brought up in the Adams case that I think is something

16  that is applicable, is the fact that the Adams case did make

17  note that the Court does have, you know, can't just look at a

18  motion to amend in a vacuum.  It's got to look at, you know,

19  the entire record and consider the fact that summary judgment

20  had previously been granted on behalf of defendant.

21          THE COURT:  Well, how does it cause prejudice?

22          MS. VIALA:  Well, it causes prejudice because, I

23  mean, this is essentially, it's breach of warranty claim.

24          THE COURT:  No, no, no, no, we'll get to the

25  substance, but you know, you and your colleague are going to

37

1   argue that, you know, Rule 15 doesn't apply, that's why 59

2   rule and tell me how you're prejudiced.

3            MS. VIALA:  Prejudiced in the fact that we had

4   summary judgment.

5            THE COURT:  Any evidence lost, witnesses disappear,

6   documents destroyed?

7            MS. VIALA:  Well, this is an old case.  I mean, as

8   the Court is aware, we're talking about events that occurred

9   back in the 1990s.

10            THE COURT:  So is there any material difference

11   between where your client stands now as where it stood two

12   years ago?

13            MS. VIALA:  I have not actually confirmed whether I

14   still have some witnesses that have not passed away, but we

15   do have older --

16            THE COURT:  Right.

17            MS. VIALA:  -- older people and certainly, you know,

18   there is a possibility that they move away, they forget.

19            THE COURT:  That all existed two years ago.

20            MS. VIALA:  That is true, but I would like to remind

21   the Court that as much as the plaintiff claims that, oh,

22   we're just in the pleading stage, we haven't done discovery.

23   That that is not the case.  I mean, discovery on these valves

24   has been going since 2007, with the Dunkett (ph) case.  We

25   had a lot of written discovery that occurred.

38

1          THE COURT:   That has nothing to do with this case.

2          MS. VIALA:   I understand that, but the fact that the

3    -- the point is, is that the plaintiff has these boilerplate

4    allegations in their Amended Complaint and they have no facts

5    to support them and they have taken depositions, they have

6    conducted written discovery and despite all that, they still

7    have no facts to support, you know, these boilerplate

8    allegations of knowing concealed, suppressed or omitted

9    material facts.   Now, they have no facts that they've alleged

10   that supports that boilerplate language.

11         THE COURT:   This is a motion to dismiss, not a

12   motion for summary judgment.

13         MS. VIALA:   I understand, but they have not pled

14   anything that supports that.   The only thing that they have

15   pled are these statements from --

16         THE COURT:   It's not a motion to dismiss, I'm sorry,

17   it's a motion to amend, but the futility argument, et cetera.

18         MS. VIALA:   Right and under a motion to amend, you

19   have to consider whether or not these are futile arguments.

20   And the fact that they haven't, they haven't complied with

21   the standard of 9(b) of specificity of fraud.   They haven't

22   pled, you know, who received these statements.   I mean, they

23   claim that, you know, we have all the information.   Well,

24   they're the ones, South Jersey Gas, it's their employees who

25   allegedly or not, you know, received these representations

39

1    and they can't identify a single person, that they can plead

2    in their Complaint, received these allegations, because,

3    frankly, because none exist.

4            I'd also like to point out that South Jersey Gas is

5    not a consumer under the Consumer Fraud Act.  This is a UCC

6    case.  South Jersey Gas is a sophisticated entity.  It bought

7    these valves to use in its gas services.  I mean, if anyone

8    is sophisticated in gas service, including the inspection and

9    the maintenance and the servicing of its component parts,

10   you'd expect it to be your gas utility company.

11           THE COURT:  So what?

12           MS. VIALA:  Well, that means that they're, that

13   they're not a consumer.

14           THE COURT:  Is there law that says --

15           MS. VIALA:  They're using it as business.  They're

16   taking these valves and providing the service to their

17   consumers.

18           THE COURT:  South Jersey Gas sells gas.

19           MS. VIALA:  Well, it's no different from the ARC

20   case.

21           THE COURT:  Do you think they know more about valves

22   than your client?

23           MS. VIALA:  I think they know just as much about

24   valves.  They're the ones that, you know, put them --

25   installed them, you know, presumably do inspections of them

1    and maintain them.  Maybe not, but you know, presumably, you

2    know, when you buy something, you, you know, do some sort of

3    when it's not your job, when that's the service you provide,

4    then you would expect that they would have some knowledge,

5    they're governed by federal regulations.  You know, they

6    should know how these valves work and how to inspect them and

7    how to maintain them.

8             THE COURT:  Your position is that, essentially,

9    every large, sophisticated company is not entitled to bring a

10   CFA claim?

11            MS. VIALA:  Well, sophisticated in what their

12   particular product is that they're dealing with.

13            THE COURT:  They don't sell products, do they?

14            MS. VIALA:  But they sell gas services.

15            THE COURT:  Right.

16            MS. VIALA:  So in order to provide the gas services,

17   they have to inspect and maintain the components, the parts

18   that they use to provide that gas service.

19            THE COURT:  Right.

20            MS. VIALA:  So that is what makes them a

21   sophisticated entity.

22            THE COURT:  And because of that, there's something

23   in the case law that says they can't bring a CFA claim?

24            MS. VIALA:  That's correct.

25            THE COURT:  What cases are you relying on for that?

1       MS. VIALA:  The Paper Graphics International and the

2   ARC Networks case, that the act does not apply to parties who

3   are experienced commercial entities of relatively equal

4   bargaining power, engaging in negotiated contracts, which is

5   what we have here.  I mean, certainly South Jersey Gas, you

6   know, is a large commercial entity.  They purchased thousands

7   and thousands of these valves.  They certainly have an equal

8   bargaining power.

9       And then moving on to the specific factors, as the

10   Court pointed out earlier, the plaintiffs have not

11   sufficiently alleged the elements of fraud under 9(b).  There

12   is no claims as to, you know, who that these alleged

13   misrepresentations were made to.  I mean, that's knowledge

14   that is within their own company.  I mean, if anyone is going

15   to be able to tell, you know, who received those alleged

16   misrepresentations, it's somebody within plaintiff's own

17   camp, that they should know that.

18       Secondly, there has been no adequate allegations of

19   unlawful practice.  As we cited, a breach of warranty alone,

20   is not a sufficient unlawful practice.  You have to have

21   substantial aggravating circumstances and I cited to two

22   examples of that.  The Suber versus Chrysler Corporation and

23   the Naparano (ph) Iron and Metal case, where you had the

24   defendants that, you know, denied the claims and then said,

25   okay, we're going to repair and we're going to replace, but

1  then they go back on that promise.  And that was when the

2  Court decided that there was sufficient aggravating

3  circumstances, that merely having a defect in your product

4  was not enough.  And that's from the DiNicolo versus Walton

5  (ph) Furniture, the Lopino versus Mercedes Benz and the

6  Parker case, as well.

7        To the extent that they claimed that there was an

8  omission, they have not made any sufficient allegations of

9  knowing concealment.  They have not alleged any facts that

10 can establish that Eclipse knew about these alleged

11 misrepresentations at the time that they made them.  There's

12 been no factual allegation of that whatsoever and again, I

13 mean, the Court needs to, you know, have some discretion to

14 review the record in this case and that there's been no

15 support, factual support of that, at all.  And we have had

16 some discovery that has proceeded.  We, at least, had written

17 discovery and then nothing has come to light that support

18 that kind of claim.

19        It is not enough to allege that the defendant might

20 know or might have known that the defect would cause these,

21 the gas valves to fail after more than ten years of service

22 and that's based on the Alvin versus the BMW North America

23 case.  That just because BMW knew or should have known about

24 a trunk insulation defect, that because there was no

25 allegations as to when they learned of the defect, how they

1   gained the knowledge, who possessed the knowledge and when or

2   how the decision was made to conceal the defect and nothing

3   like that has been alleged by South Jersey Gas.

4        Next, the plaintiffs do not have an ascertainable

5   loss.  As I have cited in Perkins versus Daimler Chrysler and

6   Duffy versus Samsung Electronics, this is a product that has

7   more than outlasted its warranty.  I mean, it was a one-year

8   warranty that was provided on these products.  That was set

9   forth in the summary judgment motion and these gas valves

10  have lasted, at a minimum, of ten times that warranty and in

11  most cases, significantly more.  That there is no loss under

12  the Consumer Fraud Act when a product has more than outlasted

13  its warranty.

14       And finally, there is not causation, because there's

15  no allegations that the plaintiff -- the plaintiff has to

16  allege when the statements were made and at what point that

17  the plaintiff was exposed to these statements.  There's been

18  no allegation of that in the Complaint and that's where I

19  kind of tied in the Statute of Limitations issue, where the

20  Court rejected the fact that the defendant's products

21  brochures, at the time of purchase in 1995, that when the

22  plaintiff finally learned, eleven years later, that those

23  statements were not true, such a claim is not sufficient show

24  a causation because it's barred by the Statute of

25  Limitations.

44

1          THE COURT:  Is that in your brief?

2          MS. VIALA:  Yes.

3          THE COURT:  In the --

4          MS. VIALA:  It's on page 16, the Cooper Hosiery

5   Mills versus Honeywell International.

6          THE COURT:  Plaintiff cannot establish causation for

7   it's NJCFA claim.

8          MS. VIALA:  Right.

9          (Pause.)

10          THE COURT:  Is that the extent of your Statute of

11   Limitations argument?

12          MS. VIALA:  That is, but it's partially because the

13   plaintiff didn't allege any particular date in their proposed

14   Amended Complaint, that would really have allowed us to

15   crystalize that argument.  You know, they did not allege

16   specifically, you know, when they made these or when they

17   learned about these or when they claimed that they relied or

18   found out about these alleged misrepresentations.

19          THE COURT:  So is that why you only spent four

20   sentences in your brief on Statute of Limitations?

21          MS. VIALA:  That's correct, your Honor.

22          THE COURT:  Okay.  I'll have to focus on that case

23   again.

24          MS. VIALA:  Additionally, as I said, I know this is

25   a motion to amend, but I think that the Court has the

1    discretion, in this case, especially since the summary

2    judgment has been granted, you know, to look a little bit

3    more closely and to, you know, look at some of the evidence

4    that has been discovered in this case.  You know, including

5    the statements by the purchasing agents from the plaintiff,

6    who, you know, said under oath.

7            THE COURT:  Let me stop you there.

8            MS. VIALA:  Okay.

9            THE COURT:  Can I do that?  Can I do that?

10           MS. VIALA:  Yes, you can.

11           THE COURT:  What authority do I have to do that?

12           MS. VIALA:  The fact that this is a motion to amend

13   and it's got a heightened standard than a simple, you know,

14   complaint where I can do a 12(b) motion.  And even under --

15           THE COURT:  So doesn't this Black Letter law say

16   under the futility analysis, you apply the 12(b)6 standard

17   and if I do that, how can I possibly look at a deposition?

18           MS. VIALA:  Because I think, under the Adams case,

19   that you're allowed to have a little bit of discretion when

20   there has been a summary judgment motion, where evidence had

21   been submitted under that summary judgment to consider that

22   as part of the record.

23           THE COURT:  Okay.  So that's the hybrid that you're

24   talking about.

25           MS. VIALA:  Yes.

46

1          THE COURT:  Okay.  Anything else?

2          MS. VIALA:  I believe that is all that I have.  If

3    your Honor has any further questions.

4          THE COURT:  Can you tell me why the discovery rule

5    does not apply to the Statute of Limitations here?

6          MS. VIALA:  Well, only because if you apply the

7    discovery rule to what is clearly a breach of warranty claim,

8    then I think that you're, again, you're sort of that

9    intermixing of contract law and tort law and it, you know, it

10   mixes what should be a clear UCC claim.  And you know, if

11   you're allowed to apply the discovery rule to a breach of

12   warranty claim to turn it into a Consumer Fraud Act, without

13   having other, you know, aggravating circumstances that are

14   clearly not evident here.  Then that really kind of blurs

15   that distinction and you end up doing away with contract law.

16         THE COURT:  Is there case law that says that?

17         MS. VIALA:  I was unable to find any specific case

18   law, other than the, well, I could talk about how, you know,

19   you can't have a simple, you know, you can't turn a breach of

20   warranty claim into a Consumer Fraud Act without the

21   aggravating circumstances.  And all the cases under that

22   came, you know --

23         THE COURT:  But that doesn't --

24         MS. VIALA:  --  we're brought --

25         THE COURT:  Right.

1          MS. VIALA:  clearly within --

2          THE COURT:  Right.

3          MS. VIALA:  -- the six-year Statute of Limitations.

4          THE COURT:  Those cases are not in the context of

5    Statute of Limitations arguments.

6          MS. VIALA:  Correct, I have been unable to find any

7    particular case that dealt with issues like this where you

8    had a product that had been sold ten, 15 years prior, that

9    was now being turned into a Consumer Fraud Act without, you

10   know, some of these real aggravating circumstances.

11         THE COURT:  Didn't plaintiff cite cases where the

12   discovery rule was applied?

13         MS. VIALA:  I am not sure.  I don't have them

14   specifically at hand.  I'd have to re-look at their motion.

15         THE COURT:  Anything else you want to add, Counsel?

16         MS. VIALA:  I think I've pretty much said mostly of

17   what I believe is the rules here that, you know, the pleading

18   is inadequate.  Thank you.

19         THE COURT:  Counsel?

20         MR. EBLEN:  Your Honor, may I address one point?

21         THE COURT:  You can address any point you want,

22   Counsel.

23         MR. EBLEN:  Okay.  I mean, obviously, we join in the

24   futility argument that the Eclipse defendants have made and

25   did not separately brief all those arguments, because they're

1   equally applicable to both parties.  So I'll defer on

2   futility, but I think, if we assume that the case is even

3   evaluated under Rule 15, not addressing what we've already

4   dealt with on the Rule 59 dichotomy, there's an ample undue

5   delay and there is prejudice and when you balance those two

6   factors, there's very good reason under Rule 15.

7           THE COURT:  Well, let's talk about the prejudice.

8           MR. EBLEN:  The prejudice is twofold.  One,

9   tactically, why in any case, if this was condoned, where it's

10  admitted and that counsel has admitted that they very same

11  facts and the written warranty around which they framed their

12  initial Complaint, is the same set of facts and the same

13  warranty they are now asserted a consumer fraud claim after

14  the case was dismissed in its entirety.  Why not do that in

15  every single case, where the idea is with your pleadings and

16  the completeness and representations that you're supposed to

17  submit to the Court, you put everything out on the table.

18  You brief something extensively.  You have a District Judge

19  rule upon it.  You have your Honor get an 11th hour, I mean,

20  I guess it would be more like 1:00 in the morning complaint,

21  because it's after dismissal has already been entered.  And

22  you multiply your proceedings and you go through all of that.

23  You go up to the 3rd Circuit, which wouldn't have ever

24  happened, had you had it properly pled the first time, when

25  you have those exact same pieces of information around which

1    you frame this new theory.

2          So you've multiplied proceedings and you've also

3    forced the other side, as well as the District Judge, to

4    preview what his thoughts are on the case.  And so you take

5    the benefit of that and you retrench and you say, well, let's

6    come up with something that keeps us alive.

7          THE COURT:  Let me turn that argument around.  If we

8    accept that argument, then you'd be saying that after

9    judgment is issued, you can't move to amend your Complaint to

10   assert a new cause of action and we know that's not the law,

11   right?

12         MR. EBLEN:  I understand that, I understand.

13         THE COURT:  You see plenty of cases out there where

14   these types of motions have been granted.  So if I accept

15   your argument, then all those cases that grant amendments

16   post-judgment --

17         MR. EBLEN:  But that's where you have to look to the

18   specific facts here.  And when it's already acknowledged

19   that, you know, basically --

20         THE COURT:  Is it any different here than it was in

21   those other cases?  They litigated the case, they lost and

22   they came up with a new theory based on the same facts after

23   the judgment was entered.  Is this any different than

24   numerous different cases out there?

25         MR. EBLEN:  It's very -- I don't know what the

1    numerous cases are, for sure, but I'll address <u>Adams</u>.  It's

2    very different than <u>Adams</u> and the reason for that is the

3    alternative theory in <u>Adams</u> had come up as a theory of the

4    case, but had never been added before judgment entered.  And

5    before the summary judgment entered, that theory of the case

6    and before the 3rd Circuit made the decision it did, that

7    theory of the case that was added after summary judgment

8    wouldn't even have been actionable, because if the party

9    against which the amendment was brought, if the 3rd Circuit

10   had found the other way, that cause of action wouldn't have

11   had any legs.  It wasn't until the 3rd Circuit said that the

12   union had standing under the contract to do what it did,

13   which was adverse to the party bringing the claim, that they

14   were able to then sue the union, where before, that wasn't a

15   theory they had.

16          So it's very -- that fact pattern is very, very

17   different than what we have here.  Where it's acknowledged on

18   the record that back at the time they framed the Complaint in

19   this case, it's admitted they could have framed the exact

20   same CFA theory, if it was actionable.  But instead, it was

21   after, you know, putting the courts and the litigants through

22   decision one, that then they file a leave to amend, to assert

23   something that could have been asserted based on the exact

24   same facts with the same framework in place that you go up

25   and take an unnecessary appeal.  You preview what the Court's

1    thinking and then you go ahead and assert a different theory.

2    That's a very different set of circumstances and I still

3    think it begs the question, at the end of the day, if you can

4    do that on the facts of this particular case, why wouldn't

5    plaintiffs always do something like that?  Because, if you

6    know your going to get a second bite at the apple, you know

7    at the end of the day, you can see what the District Court is

8    thinking, you can see what all the litigants are going to put

9    in their papers before the Court and their theories of

10   defense.  Why not do it?  Even though it's going to multiply

11   proceedings and even though it's not supposed to be what you

12   do if you have a basis for a cause of action.  When you take

13   it in that context, you have a very, very strong basis to

14   deny the motion based on the Rule 15 factors.

15             THE COURT:  Counsel, you have the last word.

16             MS. FREY:  Kind of working backwards and addressing

17   the arguments just made, I would disagree that this case is

18   different from Adams and I think it's very similar to Adams

19   and in the Adams case, the court said that the theory that

20   the Amended Complaint was based on was the same facts as the

21   original theory and actually could have been raised in the

22   original Complaint.  But it wasn't and the court said that's

23   okay, you can still amend now.  The fact that it could have

24   been brought earlier, it's based on the same facts, is of no

25   consequence.  And the reason why is that the defendants had

1    not litigated that issue and here, we have not litigated the

2    Consumer Fraud Act.  A breach of warranty claim is based on

3    the fact that you have a product, it was supposed to act one

4    way and it acted another way.  And that's basically the

5    elements for a breach of warranty.  So the Consumer Fraud

6    Act, however, is you made certain representations about your

7    product and you lied about those representations.  You

8    misrepresented those qualities of that product.  It is a

9    different and we haven't litigated that issue in this case.

10            When you ask both defendants what prejudice they

11   have, neither one could articulate any prejudice.  In the

12   Adams case, the argument was there would be additional

13   counsel fees and that you would prolong the finality of the

14   case and the court found that that was not prejudice.  That

15   was not, you know, something that would prohibit a plaintiff

16   from amending the Complaint, at that stage.  And again, this

17   case is admittedly, based on representations made in the '80s

18   and '90s, but we're not really in any different position with

19   regards to prejudice as to lost witnesses or anything than we

20   were a year ago, when the original motion was filed.  And

21   that's really what the issue here, not whether or not there

22   was, you know, somebody who was around in the '80s or '90s is

23   still around.

24            To address the argument as to whether a

25   sophisticated consumer -- South Jersey Gas is not a

53

1   sophisticated designer of valves.  This is a design issue and

2   if we don't make the valves, we don't design the valves.  If

3   we were a sophisticated designer, would design them ourselves

4   and not have to purchase them.  And again, there is no case

5   law which says that sophisticated businesses aren't entitled

6   to the protection and entitled to be free from fraudulent

7   transactions.

8           The ARC and Paper Graphic cases, again, those were

9   dealing with situations where somebody resold the products.

10  The issue with regard to that this product has outlasted its

11  warranty and therefore we should have some protection against

12  that.  Again, that goes to my -- the breach of warranty

13  you're talking about is a defective product.  You had a

14  product, it didn't perform as it was supposed to, consumer

15  fraud.  You made representations about that product and those

16  misrepresentations were fraudulent.

17          The Statute of Limitations issue, again, if you look

18  at the NN&R case, which is cited in our brief, it's a 2005

19  District of New Jersey case on page six of our brief.  In

20  that situation, you had a plaintiff who had purchased an

21  insurance policy from an insurer and the insurer made certain

22  representations that said every year you're going to have an

23  increase in your premium, but you also have an increase in

24  your coverage.  That representation was made in December of

25  1989 and the year 2000, the plaintiff had a loss at his home,

54

1    made a claim and discovered that contrary to what the

2    insurance company had represented, that every year he paid

3    more for premiums, he would get more coverage.  The premiums

4    had gone up, but the coverage had not gone up and the court

5    said that even though the best representations were not

6    discovered until 2000, when the structural damage was

7    sustained to the property and the claim was made to the

8    insurer, since it was brought within six years of the

9    discovery of the misrepresentation, the claims were not

10   barred by the Statute of Limitations.

11          So where here we have again misrepresentations and

12   '80s and '90s, discovery rule applies, they were not

13   discovered arguably until the earliest of February, 2005.

14   And those dates are alleged in our Complaint and again, this

15   was we sought to amend in May of 2010 and fall within the

16   six-year Statute of Limitations.

17          THE COURT:  Is South Jersey Gas a consumer within

18   the Consumer Fraud Act?

19          MS. FREY:  Yes.

20          THE COURT:  Why?

21          MS. FREY:  Because the act says we are.  The plain

22   language of the act says any person may bring an action and

23   specifically defines in section -- person is a defined term

24   in the act and it is defined to include businesses --

25   individuals, businesses, corporations, trusts, et cetera.

55

1   And also because the courts have said that we are entitled to

2   it.  There is no case law that says a corporation cannot be

3   entitled to protection under the CFA.

4            THE COURT:  Did South Jersey Gas use the valves?

5            MS. FREY:  Yes.

6            THE COURT:  Did they diminish or destroy the utility

7   of the valves?

8            MS. FREY:  No.

9            THE COURT:  If that's the case, is it a consumer?

10  There appears to be --

11           MS. FREY:  Well --

12           THE COURT:  -- excuse me.

13           MS. FREY:  -- sure.

14           THE COURT:  There appears to be case law that says

15  that a consumer is one who uses goods and diminishes or

16  destroys their utility.

17           MS. FREY:  Right, well --

18           THE COURT:  Did that happen here?

19           MS. FREY:  I think I misunderstood what you meant by

20  destroyed the utility.  Yes, we purchased these valves to

21  use.  We put them on meters and they were used.  And it's

22  like when you drive your car off the lot, the value goes down

23  immediately, because it's being used.  So those products were

24  used.  They were consumed in the provision of services to our

25  gas customers.  So within that definition, yes.  It's not we

56

1    took the valves and set them on our shelves for 20 years and

2    they were never used and are in the same boxes they came in.

3    They were used and obviously, they're -- like I said, like

4    your car when you drive off the lot, the value automatically

5    goes down.  You are using the valves.

6              THE COURT:  Anything else, Counsel?

7              MS. FREY:  No, your Honor.

8              THE COURT:  Thank you very much.

9              MS. FREY:  Thank you.

10             THE COURT:  Defendant, do you have anything to add?

11   That sounds like a no to me.

12             MS. VIALA:  I think we'll just go with the brief.

13             THE COURT:  Thank you for your briefs and your

14   excellent argument.  The Court is taking the issue under

15   advisement.  I have a number of issues to look at and we hope

16   to issue our order and opinion promptly.  Thank you, Counsel,

17   we're adjourned.

18             (Proceeding adjourned 3:15 o'clock p.m.)

19                              * * *

CERTIFICATION

      I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

s:/Geraldine C. Laws, CET          Dated 8/11/11
Laws Transcription Service