[Doc. No. 62]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SOUTH JERSEY GAS COMPANY, | |
| Plaintiff, | |
| v. | Civil No. 09-4194 (RBK/JS) |
| MUELLER COMPANY, LTD, MUELLER GROUP, LLC, ECLIPSE INC., ROCKFORD ECLIPSE, INC., ECLIPSE COMBUSTION, and/or POWER EQUIPMENT COMPANY, XYZ ENTITY (A-Z), | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on plaintiff South Jersey Gas Company's (hereinafter "South Jersey Gas" or "plaintiff") "Motion for Leave to File Amended Complaint." [Doc. Nos. 62, 66].[1] Plaintiff seeks to amend its complaint to assert a Consumer Fraud Act claim. Defendants oppose the motion [Doc. Nos. 64, 65] and oral argument was held. For the reasons to be discussed plaintiff's motion is DENIED.

_____

[1]After plaintiff filed its motion it filed a "Praecipe to Substitute Corrected Proposed Amended Complaint." [Doc. No. 63]. The Court will refer to the substitute proposed amended complaint rather than the version attached to plaintiff's motion. [Doc. No. 62-1].

1

**BACKGROUND**

On July 17, 2009, plaintiff filed its complaint against defendants in state court. [Doc. No. 1-1]. The case was removed to federal court on August 17, 2009. Plaintiff's complaint named (1) Mueller Company, Ltd. and Mueller Group, LLC (collectively "Mueller"), and (2) Rockford Eclipse, Inc. and Eclipse Combustion and/or Power Equipment Co. (collectively "Eclipse").[2] Plaintiff alleges it is a public utility corporation engaged in the transmission, distribution, transportation and sale of natural gas in South Jersey. Proposed Amended Complaint ("Proposed Amend. Compl.") ¶¶ 1, 8. Plaintiff further alleges "upon information and belief" that "in or around the latter part of the 1980s and early part of the 1990s" it bought "various valves" from Eclipse. Id. ¶ 14. In addition, plaintiff alleges "[i]n or around 1993" Eclipse sold its Rockford Eclipse product line to Mueller. Id. ¶ 22.

Plaintiff bought defendants' valves for installation at customers' homes and/or businesses. Id. ¶¶ 16, 17. Plaintiff's complaint alleges Eclipse and Mueller represented their valves to be "free from defects in material and workmanship under normal use, service and maintenance." Id. ¶21. Plaintiff contends defendants'

---

[2]As discussed herein, the background averments in plaintiff's original complaint are included in plaintiff's proposed amended complaint. Unless otherwise noted, the Court cites to the proposed amended complaint.

valves were defective. Plaintiff refers to an explosion and other "failures" that occurred in February 2005, July 18, 2005, and "recently" (March 12, 2008), allegedly caused by defective valves. Id. ¶¶ 33-35. Plaintiff alleges an investigation completed on or around July 2008 "concluded that the explosion and other failures were caused by defendants' valves and that the valves were installed in 70,000 residences or businesses. Id. ¶36. Plaintiff's original complaint alleged breach of express warranties, as well as of implied warranties of merchantability and fitness for a particular purpose. As will be discussed, these warranty claims were dismissed.

In September 2009, Mueller filed its Motion to Dismiss Plaintiff's Complaint or in the alternative for Summary Judgment. [Doc. No. 10]. Eclipse filed a Motion to Dismiss. [Doc. No. 11]. On April 27, 2010, the Honorable Robert B. Kugler, USDJ, granted Mueller's Motion for Summary Judgment because the statute of limitations had run. [Doc. Nos. 33, 34]. Because Eclipse relied on documents outside the pleadings, Judge Kugler converted its Motion to Dismiss into a Motion for Summary Judgment. See 2010 WL 1742542, at *5 (D.N.J. April 27, 2010). Eclipse's Motion for Summary Judgment was granted on May 26, 2010, terminating the case. [Doc. Nos. 50, 51].

On May 7, 2010, plaintiff filed its Motion for Leave to File Amended Complaint. [Doc. No. 38]. The motion was filed after

3

Mueller's Motion for Summary Judgment was granted (April 27, 2010) but before Eclipse's Motion for Summary Judgment was granted (May 26, 2010). On May 28, 2010, after the case was terminated, this Court denied plaintiff's Motion to Amend as moot. [Doc. No. 52].

Plaintiff appealed Judge Kugler's rulings to the Third Circuit. On May 13, 2011, the Third Circuit issued its Opinion and affirmed the dismissal of plaintiff's claims as "barred by both the plain language of the warranties and by the statute of limitations." South Jersey Gas Co. v. Mueller Co., Ltd., 429 Fed. Appx. 128, 130 (3d Cir. 2011). However, the Court vacated the denial of plaintiff's Motion to Amend because this Court "erroneously concluded that South Jersey's motion was moot." Id. at 131. The Third Circuit remanded the case for consideration of plaintiff's Motion to Amend. Id.

After the Third Circuit issued its mandate, plaintiff filed the Motion for Leave to File Amended Complaint presently before the Court. Plaintiff's proposed amended complaint is identical to its original complaint except for the addition of several background paragraphs, the deletion of its breach of warranty claims, the removal of all specific references to a warranty, and the inclusion of a claim under the New Jersey Consumer Fraud Act ("CFA").

Plaintiff's new allegations are contained in paragraphs 9-13, 21, 29, and 30-32 of the proposed amended complaint. Specifically, plaintiff now avers:

4

9. Connected to Plaintiff's service lines were approximately 70,000 shut-off valves designed, manufactured[,] distributed and sold by defendants.

10. When installed, a valve is located upstream of the Plaintiff's customer's gas meter, and allows Plaintiff to prevent gas from flowing to the meter in order, for example, to service, move, remove or replace the meter. It allows for a shut-off of gas to the meter and downstream of the meter.

11. In general, the gas distribution main runs parallel with a street, and a service line runs perpendicular from the distribution main to the customer's residential or business location. At the end of the service pipe is a riser from the ground to the gas meter. This riser is frequently located on the exterior of the residence or other building using the gas. On the riser, just prior to the meter, is the shut-off valve.

12. Until work is performed on a meter, there is rarely a reason to operate the valve off so as to prevent gas from flowing to the meter. Since most valves were installed when new service lines were installed to connect new customers, it was foreseeable to defendants that most valves would not be shut for years and even decades after installation.

13. Defendants as designers, manufacturers, and sellers of the valves knew or should have known that the valves would not be operated as a matter of routine, standard operating procedure.

21. Defendant Eclipse represented that these Valves were free from defects in material and workmanship under normal use, service and maintenance.[3]

_____

[3]This paragraph is identical to paragraph 16 in the original complaint except plaintiff substituted "represented" for "warranted."

29.  Defendant Mueller represented that these
Valves were free from defects in material and
workmanship under normal use, service and
maintenance.[4]

30. Defendants also made various
representations about the Valves, including
the following:

"maximizes resistance to corrosion"
"additional seal to prevent atmospheric leakage"
"for a tight seal and last indefinitely"
"insures precise tolerances are held between
mating parts"
"provide thousands of cycles with no leakage
and virtually no wear"
"No torque adjustments needed--even if
stationary for long periods of time"
"Designed To Meet Your Needs"
"We guarantee the performance of our valves"
Operates properly "over the operating
temperature range"
"Heavy duty operating head withstands tool
abuse"
"Insulated O-Ring Union"
"All models meet or exceed" standards and
requirements
"Temperature Range: -20° to +150°F"
"Maintenance Free Gas Service Valve"
"low design torque compared to conventional
valves, yet the rotor cannot be turned by
hand"
"seals valve against atmospheric leakage"

31. Contrary to the representations provided by
Defendants Eclipse and Mueller, the Valves were not
free from defects in material and workmanship under
normal usage, service and maintenance.[5]

---

[4]This paragraph is identical to paragraph 24 in the original
complaint except plaintiff substituted "represented" for
"warranted."

[5]This paragraph is identical to paragraph 25 in the original
complaint except plaintiff substituted "representations" for
"representations and warranties."

6

32.  Contrary to the representations provided by defendants, the Valves failed to meet the promises made to Plaintiff.

**DISCUSSION**

**Standard of Review**

The first issue to address is the standard of review that applies to plaintiff's Motion to Amend.  Ordinarily this a straightforward issue.  However, the present situation is complicated by the fact that plaintiff's first Motion to Amend was filed after summary judgment was awarded to Mueller and before summary judgment was granted to Eclipse.  Plaintiff argues the Court should apply Rule 15(a)(2).  Mueller and Eclipse argue Rule 59(e) applies.

Although the parties have their own views, the Third Circuit's ruling could not be clearer.  Specifically, the Third Circuit ruled that "as to Mueller, the motion to amend should have been construed as a motion under Rule 59(e) because it was filed within 28 days of judgment."  429 Fed. Appx. at 131 (citing Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002)).  As to Eclipse, the Third Circuit ruled that "the motion was properly raised under Rule 15 and it should have been reviewed under the well-established standards governing such motions."  Id.  As will be discussed, however, although different rules apply to Mueller and Eclipse, the result is the same.

7

The controlling decision for the standard of review under Rule 59(e) is Adams v. Gould Inc., 739 F.2d 858 (3d Cir. 1984), cert. denied, 469 U.S. 1122 (1985).  The issue presented in Adams is similar to the one before this Court.  In Adams, the plaintiff moved to alter or amend judgment and for leave to file a second amended complaint after the lower court had entered summary judgment for the defendants.  Adopting the Fifth Circuit's understanding of the relationship between Rules 15(a) and 59(e), the Third Circuit reversed the district court's denial of the plaintiff's motion and held that a court should apply the same factors to "a timely motion . . . filed under [Rule 59(e)]" as it would to a motion to amend filed under Rule 15(a).  Id. at 864 (citing Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597 n.1 (5th Cir. 1981)); see also Burtch v. Milberg Factors, Inc., ___ F.3d ___, 2011 WL 5027511, at *15 (3d Cir. 2011) ("In this Circuit, where a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and 59 inquiries turn on the same factors") (citation and quotation omitted).  Specifically, the Third Circuit wrote:

> [W]e will apply the standard of review which would be applicable had the motion been brought without the complication of a prior grant of summary judgment, although the factors that must guide our review may be affected by the fact that a summary judgment was granted before plaintiffs sought leave to amend their complaint.

739 F.2d at 864.  The Adams decision set forth the four step analysis that applies when a court considers a motion to amend

8

filed in response to an adverse judgment:

> Therefore, we must first examine the substance of the theory that plaintiffs attempted to assert in their second amended complaint, to determine whether the amended complaint states a cause of action. Next, we must consider the relationship between that claim and what was decided by the previous panel in this case, to see whether claim is barred by that decision. Third, we must determine whether the cause of action is barred by the statute of limitations. Our scope of review over these three questions is plenary. Finally, we will examine the factors which must inform the district court's discretion in denying a motion to reopen a judgment and amend a complaint under Rules 59(e) and 15(a), to determine whether that discretion was abused.

Id.

In Hatzel & Buehler, Inc. v. Southern Systems, Inc., Civ. No. 86-2177, 1988 WL 101255 at *4-5 (D.N.J. Sept. 28, 1988), the court summarized the Adams test:

> Under Adams, a court must first answer three questions: (a) Does the amended complaint fail to state a cause of action? (b) Were the claims now presented in the amended complaint decided in a prior judgment? (c) Are the claims in the amended complaint barred by the statute of limitations? If the answer to each of these questions is 'no,' then the Court proceeds to the second step of the inquiry. Here the Court must ask whether 'plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party.' Foman v. Davis, 371 U.S. 178, 182 (1962). If the Court cannot say that the delay was undue, in bad faith, or prejudicial, it must grant the plaintiff leave to amend.

As to Eclipse and the Rule 15 standard of review, the law is well-established. Pursuant to Rule 15, leave to amend a pleading

shall be freely given in the absence of undue or unexplained delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment or futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962); Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004). In determining the futility of an amendment, the Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Burtch, 2011 WL 5027511, at *16. The Court must accept as true all factual allegations contained in the proposed amended complaint and any reasonable inferences that can be drawn from them. Brown v. Phillip Morris, Inc., 250 F.3d 789, 796 (3d Cir. 2001) (citing Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993)).

No matter whether Rule 59(e) or Rule 15 is applied, a motion to amend must be denied where the proposed amendment does not state a cause of action. See Burtch, supra. Here, the Court finds that plaintiff's proposed CFA claim is futile for three (3) reasons. First, plaintiff's CFA claim is essentially identical to its breach of warranty claim. The claim, therefore, is futile because under New Jersey law a mere breach of warranty does not result in a CFA violation. Second, plaintiff has not sufficiently pled a fraud claim pursuant to Fed. R. Civ. P. 9(b). Third, plaintiff has not pled causation, an essential element of a CFA claim.

**Plaintiff's CFA/Breach of Warranty Claim**

As noted, plaintiff seeks to amend its complaint to add a count for violation of New Jersey's CFA. The CFA "is aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate. In order to survive a motion to dismiss, a plaintiff must allege that: (1) the defendant engaged in an unlawful practice; (2) the plaintiff suffered an ascertainable loss; and (3) there is a causal relationship between the unlawful conduct and the ascertainable loss." Latraverse v. Kia Motors of America, Inc., No. 10-6133 (RBK/AMD), 2011 WL 3273150, at *4 (D.N.J. July 27, 2011) (quotation and citations omitted).

Plaintiff alleges defendants made affirmative misrepresentations concerning the quality of their valves and they failed to disclose facts concerning the quality of the valves. Transcript ("Tr.") of Oral Argument 20:1-12. Plaintiff concedes that every one of defendants' alleged false representations (Proposed Amend. Compl. ¶30) derives from its warranty claim. Tr. 25:5-9. It is plain, therefore, that plaintiff's CFA claim is based on the same facts as its dismissed warranty claims. This is confirmed by the following colloquy at oral argument:

> THE COURT: [L]et's say in 1995, the breach of warranty expired. Here we are more than ten or 15 years later and you're saying that the same exact representations give rise to a Consumer Fraud Act claim, correct?

MS. FREY: That is exactly what I'm saying.[6]
Tr. 30:22-31:2; see also Plaintiff's Brief at 3 ("The Amendment arises out of the same facts and events that support the allegations in the Complaint."). As Mueller correctly points out, "[t]he proposed consumer fraud count is based on the exact same factual allegations as the counts in the original Complaint." Mueller's Opposition Brief at 4.

As noted, the Third Circuit affirmed Judge Kugler's rulings granting summary judgment to defendants on plaintiff's warranty claims. Plaintiff's CFA claim, which is nothing more than a breach of warranty claim with a different name, does not become viable simply because plaintiff gave it a new label. New Jersey law is clear that a mere breach of warranty does not equate to a CFA cause of action. As Judge Kugler noted in Latraverse, 2011 WL 3273150, at *5, "[a] breach of warranty is not unfair or unconscionable per se and is not alone an unlawful practice under the NJCFA." See also Palmucci v. Brunswick Corp., 311 N.J.Super. 607, 616 (App. Div. 1998)("A breach of warranty or breach of contract is not per se unfair or unconscionable and does not alone violate the Consumer Fraud Act").

Where the basis of a CFA claim is essentially a breach of warranty, the plaintiff must show "substantial aggravating

---

[6]"The purpose of oral argument would be rendered utterly meaningless if a court could not rely on statements of counsel made." Mutual Ben. Life Ins. Co. v. Zimmerman, 787 F. Supp. 71, 74 (D.N.J. 1992), aff'd without op., 970 F.2d 899 (3d Cir. 1992).

circumstances." <u>Suber v. Chrysler Corp.</u>, 104 F.3d 578, 587 (3d Cir. 1997). "[S]ubstantial aggravating circumstances must be alleged with particularity." <u>Latraverse</u>, <u>supra</u> at *5 n.7. Plaintiff's proposed amended complaint does not contain a single fact as to what was concealed, when, how, and by whom. For example, plaintiff claims defendants represented that the valves at issue "were free from defects in material and workmanship under normal use, service and maintenance." <u>See</u> Proposed Amend. Compl. ¶¶ 21, 29. Plaintiff also alleges that "[c]ontrary to the representations provided by Defendants Eclipse and Mueller, the Valves were not free from defects . . . . [and] failed to meet the promises made to Plaintiff." <u>Id.</u> ¶¶ 31-32. Plaintiff further claims "[t]he unlawful practices employed by defendants here include, but are not limited to, representing that the valves have characteristics, uses and benefits that they do not and representing that the goods are of a particular standard, quality or grade." <u>Id.</u> ¶ 41. Plaintiff further claims that "[s]uch unlawful practices also include Defendants['] continuing failure to warn Plaintiff contrary to the public health and safety." <u>Id.</u> ¶ 42. Plaintiff also argues that "in violation of the Consumer Fraud Act, Defendants employed unconscionable commercial practices, deception, fraud, false pretense, false promise and misrepresentation, and/or knowingly concealed, suppressed or omitted or [sic] material fact with the intent that Plaintiff rely upon such concealment, suppression or omission, in the sale of

Valves to Plaintiff and in Defendants['] subsequent performance."
Id. ¶43.  These allegations are merely conclusory statements with
no supporting facts.  Compare Strzakowlski v. Gen. Motors Corp.,
No. 04-4740, 2005 WL 2001912, at *6 (D.N.J. Aug. 16, 2005)(holding
that sufficient specificity was provided where the plaintiff
detailed defendant's specific conduct and omissions and alleged the
general dates of the fraud).

To the extent plaintiff seeks to assert a CFA claim based on
defendants' purported omissions rather than affirmative
misrepresentations, the amendment is also futile.  "A plaintiff who
asserts a fraud claim based on omissions should 'allege what the
omissions were, the person responsible for failing to disclose the
information, the context of the omission and the manner in which it
misled plaintiff and what defendant obtained through the fraud.'"
Luppino v. Mercedes-Benz USA, LLC, Civ. No. 09-5582 (DMC)(JAD),
2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010)(quotation and
citation omitted).  Moreover, "when the alleged consumer fraud
consists of an omission, the plaintiff must show that the defendant
acted with knowledge, and intent is an essential element of the
fraud." Cox v. Sears Roebuck & Co., 138 N.J. 2, 18 (1994).

Plaintiff merely alleges that defendants' "continu[ed] . . .
to [fail to] warn Plaintiff contrary to the public health and
safety."  Proposed Amend. Compl. ¶42.  Plaintiff also claims
defendants "knowingly concealed, suppressed or omitted or material
fact [sic] with the intent that Plaintiff rely upon such

14

concealment, suppression or omission, in the sale of valves to Plaintiff and in Defendants['] subsequent performance." Id. ¶43. These conclusory statements are not supported by facts. Plaintiff does not identify what "material facts" were omitted, nor any information concerning what the omissions were, the manner in which plaintiff was misled, or what defendants obtained through the allegedly fraudulent omissions. See Luppino, supra at *7. While a court must accept a complaint's well-pleaded facts as true, legal conclusions must be disregarded. Santiago v. Warminster Township, 629 F.3d 121, 131 (3rd Cir. 2010). Further, "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," should be disregarded. Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).

Plaintiff argues it should have an opportunity to obtain relevant facts in discovery and amend its complaint before its motion is denied. To the contrary, the law is now settled that plaintiff cannot take discovery until it properly pleads a plausible cause of action. As the Third Circuit noted when it rejected the same argument plaintiff makes, the Supreme Court has addressed the standard to apply to review pleadings and its decisions must be followed. Santiago, 629 F.3d at 134 n.10 ("The Supreme Court has struck the balance [between ensuring access to the courts and protecting defendants from unnecessary burdens of litigation] . . . and we abide by it.").

15

**Fed. R. Civ. P. 9(b)**

It is well settled that a "claim under the New Jersey Consumer Fraud Act must satisfy the specificity requirement of Fed. R. Civ. P. 9(b)." <u>Pacholec v. Home Depot USA, Inc.</u>, C.A. No. 06-827 (PGS), 2006 WL 2792788, at *2 (D.N.J. Sept. 26, 2006)(citing <u>Naporano Iron & Metal Co. v. Am. Crane Corp.</u>, 79 F. Supp.2d 494, 510 (D.N.J. 2000)). Pursuant to Rule 9(b), "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007) (citing <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 223-224 (3d Cir. 2004)).

To satisfy the heightened pleading standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." <u>Id.</u>; <u>see also</u> <u>Mardini v. Viking Freight, Inc.</u>, 92 F. Supp.2d 378, 385 (D.N.J. 1999) (noting that conclusory statements do not meet the required level of specificity articulated in Rule 9(b)). "Plaintiffs also must allege who made a misrepresentation and to whom and the general content of the misrepresentation." <u>Lum</u>, 361 F.3d at 224 (holding general allegations of defendants' misrepresentations did not satisfy Rule 9(b) because they did not indicate the date, time, or place of the alleged misrepresentations, or who made the misrepresentations and

16

to whom).

Plaintiff has not alleged any facts to satisfy the heightened pleading requirement of Rule 9(b); instead, plaintiff simply makes general and conclusory allegations without any factual support. In its proposed amended complaint plaintiff cites the "various representations" allegedly made by defendants. See Proposed Amend. Compl. ¶30. For example, defendants allegedly represented that the valves would "maximize[] resistance to corrosion," and "provide thousands of cycles with no leakage and virtually no wear." Id. However, plaintiff does not indicate who made the alleged misrepresentations, when they were made, or to whom they were made.[7]  See  Flaster/Greenberg P.C. v. Brendan Airways, LLC, C.A. 08-433(JHR), 2009 WL 1652156, at *8 (D.N.J. June 10, 2009) (dismissing plaintiff's fraud claim for failing to meet Rule 9(b)'s requirements where the complaint was "devoid of names or the specifics of what may have been said"). In Latraverse, supra at *4, the Court stated that, "[t]he requirements of Rule 9(b) are satisfied where the plaintiff alleges the specific and precise instances of the defendant's fraudulent behavior under the NJCFA." This has not been done here.

This case has been pending since the summer of 2009, and plaintiff still has not provided any details regarding the

---

[7]Plaintiff's allegation that defendants purchased valves in the "1980's and early part of the 1990's" (Proposed Amend. Compl. ¶14) does not provide the specificity required in Rule 9(b).

17

allegedly fraudulent misrepresentations defendants made.  Plaintiff quotes language from defendants' warranties to support its claim, but fails to indicate who made the alleged misrepresentations, when they were made, or to whom they were made.  Put differently, plaintiff fails to inject any precision, let alone the date, time and place of the alleged fraud into its CFA claim.  Therefore, the claim is futile.  See Frederico, 507 F.3d at 200 ("[A] plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'")(citing Lum, supra, 361 F.3d at 223-224); Latraverse, supra at *4 ("[T]he requirements of Rule 9(b) are not met where the plaintiff does not allege specific and precise factual details about the defendants' fraud under the NJCFA.").

**CFA Causation Requirement**

As noted, causation is an essential element of a CFA claim. Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009) (requiring a "causal relationship" between a defendant's unlawful conduct and a plaintiff's ascertainable loss).  Plaintiff's amendment is futile because it does not assert that it bought valves because of defendants' allegedly fraudulent representations or omissions, or that it relied on defendants' misrepresentations or omissions when it installed valves on its customers' homes.  In a conclusory fashion plaintiff merely states, "[a]s a result of the misrepresentations, Plaintiff sustained damages." Proposed Amend.

18

Compl. ¶45.  This is "[a] legal conclusion[], not [a] factual allegation[] that would, if true, establish a 'causal nexus.'" Dewey v. Volkswagen AG, 558 F. Supp.2d 505, 526 (D.N.J. 2008) (quotations omitted) (dismissing plaintiff's claims related to misrepresentations published in automobile manufacturer's marketing materials and owner's manuals because "causal nexus" between misrepresentations and plaintiff's alleged injury was pleaded in "only the most general and conclusory terms").[8]  The Court concurs with Eclipse's assertion that plaintiff "did not plead a sufficient causal connection between the alleged misrepresentations by Eclipse and its 'damage' from the allegedly defective valves."  Eclipse's Opposition Brief at 16.

**Leave to Amend**

Based on the foregoing discussion the Court finds that plaintiff's proposed amended complaint is futile.  Plaintiff does not meet the "unlawful act" or causation requirements of the CFA. Plaintiff also does not meet the pleading requirements of Rule 9(b).

Because plaintiff's proposed amended complaint is futile, the remaining issue to be addressed is whether the Court should grant plaintiff another opportunity to amend its complaint.  Ordinarily, if a request to amend is denied because of the failure to plead

---

[8]The Court noted, for example, that the plaintiffs did not plead exactly when, if ever, they saw the alleged misrepresentations.  Id. at 526-27 n.20.

sufficient facts, a curative amendment is permitted unless it would be inequitable or futile.  Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008).  Because the case has been pending for two years, the Court has doubts whether plaintiff is able to plead additional facts to cure the deficiencies noted herein.  The Court assumes that if relevant facts were known by plaintiff they would have been pleaded by now.  Nevertheless, since this is the first time the merits of plaintiff's CFA claim have been addressed, the Court will grant plaintiff another opportunity to cure its pleading deficiencies.[9]

**CONCLUSION**

For all the foregoing reasons, the Court finds that plaintiff's proposed amended complaint does not set forth a cause of action or is futile.

Accordingly, it is hereby ORDERED this 18th day of November, 2011, that plaintiff's Motion For Leave to Amend Complaint [Doc. No. 62] is DENIED; and

---

[9]Since the Court has determined that plaintiff's proposed amended complaint is futile, there is no need to address the other arguments defendants raise.  Therefore, the Court does not address whether plaintiff's motion should be denied on grounds of undue delay, bad faith or prejudice, whether plaintiff is a "consumer" within the meaning of the CFA, whether plaintiff's claim is barred by the statute of limitations, or whether plaintiff suffered an "ascertainable loss."

IT IS FURTHER ORDERED that plaintiff is granted leave to re-file its Motion to Amend to cure the deficiencies noted herein. The motion shall be filed no later than December 5, 2011.

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge