# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SOUTH JERSEY GAS COMPANY, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 1:09-CV-04194- |
| | : | RBK-JS |
| vs. | : | |
| | : | |
| MUELLER COMPANY, LTD., | : | |
| MUELLER GROUP, LLC, | : | |
| ECLIPSE, INC., ROCKFORD | : | AMENDED COMPLAINT |
| ECLIPSE, INC., ECLIPSE | : | |
| COMBUSTION AND/OR POWER | : | |
| EQUIPMENT CO. AND XYZ | : | |
| ENTITY (A-Z), | : | |
| | : | |
| Defendants | | |

Plaintiff South Jersey Gas Company, by and through its counsel, Cozen O'Connor, hereby demands judgment against defendants as follows:

## **THE PARTIES**

1.      Plaintiff South Jersey Gas Company ("Plaintiff") is a public utility corporation of the State of New Jersey, with its principal place of business located at One South Jersey Plaza, Folsom, New Jersey.

2.      Defendant Eclipse, Inc. is a corporation with a principal place of business located at 1665 Elmwood Road, Rockford, Illinois 61103-1299.

3.      Defendant Rockford Eclipse, Inc. is a corporation with a principal place of business located at 1665 Elmwood Road, Rockford, Illinois 61103-1299.

4.      Defendant Eclipse Combustion and/or Power Equipment Co. is a corporation with a principal place of business located at 1665 Elmwood Road, Rockford, Illinois 61103-1299.

5.      Defendant Mueller Company, Ltd. is a corporation with a principal place of business located at 500 W. Eldorado Street, Decatur, Illinois, 62525-1808.

6.      Defendant Mueller Group, LLC is a corporation with a principal place of business located at 500 W. Eldorado Street, Decatur, Illinois, 62525-1808.

7.      Defendant, XYZ Entity (A-Z) is/are fictitious entities yet to be identified through discovery, including, but not limited to successor entities to the defendants named in this matter.

## FACTUAL BACKGROUND

8.      Plaintiff is engaged in the transmission, distribution, transportation, and sale of natural gas within its defined service territory within the State of New Jersey.  Said service territory includes all or portions of the following Counties:  Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester and Salem.  Within its service territory South Jersey serves approximately 350,000 customers.

9.      Connected to Plaintiff's service lines were approximately 70,000 shut-off valves designed, manufactured distributed and sold by defendants.

10.     When installed, a valve is located upstream of the Plaintiff's customer's gas meter, and allows Plaintiff to prevent gas from flowing to the meter in order, for example, to service, move, remove or replace the meter.  It allows for a shut-off of gas to the meter and downstream of the meter.

11.     In general, the gas distribution main runs parallel with a street, and a service line runs perpendicular from the distribution main to the customer's residential or business location.  At the end of the service pipe is a riser from the ground to the gas meter.  This riser is frequently located on the exterior of the residence or other building using the gas.  On the riser, just prior to the meter, is the shut-off valve.

12.     Until work is performed on a meter, there is rarely a reason to operate the valve off so as to prevent gas from flowing to the meter.  Since most valves were installed when new service lines were installed to connect new customers, it was foreseeable to Defendants that most valves would not be shut for years and even decades after installation.

13.     Defendants as designers, manufacturers, and sellers of the valves knew or should have known that the valves would not be operated as a matter of routine, standard operating procedure.

14.     Upon information and belief, Plaintiff purchased various valves, including Rockford-Eclipse Series 125 Lube-Ring Gas Service Valves and Rockford-Eclipse Series 175 Lube-Ring Gas Service Valves (hereinafter all valves collectively referred to as "Valves"), from Rockford Eclipse in or around the latter part of the 1980s and early part of the 1990s.

15.     These Valves were designed and manufactured by Rockford Eclipse, which was a division of Eclipse, Inc.

16.     Upon information and belief, in or around 1993, Defendant Eclipse sold its Rockford Eclipse product line to Defendants Mueller Company, Ltd. and/or Mueller Group, LLC (collectively "Mueller").

17.     Upon information and belief, Defendant Mueller continued to market, manufacture, design and sell the Valves under the Rockford Eclipse product line that Plaintiff had previously purchased from Defendant Eclipse.

18.     Plaintiff purchased these Valves from Mueller for installation at customer's homes and/or businesses throughout Plaintiff's service territory.

19.     Sales representatives from Eclipse and Mueller, including Bob Foy and Max Kurz, met with representatives from South Jersey Gas, including Charles Behm in the last 1980s and early 1990s.  Deposition of Charles Behm in *Duncan v. South Jersey Industries, Inc.*, No. CAM-L-0688-07 (N.J. Super. Camden County) ("Behm Dep.") at pp. 6-7, 9, 14-15.

20.     During those sales calls, Mr. Foy represented to Mr. Behm that the Valves designed and manufactured by Eclipse were "[b]etter than anybody else." Behm Dep. at p. 9, 37.

21.     Eclipse representatives provided South Jersey with literature stating that the Valves were "maintenance free." Behm Dep. at p. 26.

22.     Mr. Behm understood Eclipse's representations to mean that the Valves were maintenance free for the life of the Valve.  Behm Dep. at p. 26.

23.     Eclipse and Mueller represented that these Valves were free from defects in material and workmanship under normal use, service and maintenance.

24.     South Jersey relied on the representations of Eclipse and Mueller that the Valves met all ANSI standards.  Behm Dep. at p. 35.

25.     In addition, Eclipse and Mueller provided literature to South Jersey, which made various representations about the Valves, including the following:

"for a tight seal and last indefinitely"

"provide thousands of cycles with no leakage and virtually no wear"

"No torque adjustments needed—even if stationary for long periods of time"

"We guarantee the performance of our valves."

"All models meet or exceed" standards and requirements

"Maintenance Free Gas Service Valve"

26.     South Jersey relied on literature provided by Eclipse and Mueller in purchasing Valves.

27.     Upon information and belief, Defendants are in possession of additional information which support the claims herein, including specific representations, literature, and personnel involved.

28.     After purchasing the Valves, Plaintiff installed the Valves at various customer's homes and/or businesses throughout Plaintiff's service territory.

29.     At all relevant times, these Valves were installed, connected, started and operated in accordance with instructions from Eclipse and Mueller.

30.     These Valves were used for the applications specified by Eclipse and Mueller.

31.     These Valves were used in the environments as specified or limited by Eclipse and Mueller.

32.     Contrary to the representations provided by Defendants Eclipse and Mueller, the Valves were not free from defects in material and workmanship under normal usage, service and maintenance.

33.     Contrary to the representations provided by defendants, the Valves failed to meet the promises made to Plaintiff.

34.     In or around February 2005, an explosion occurred as a result of a defectively designed Rockford-Eclipse Series 125 Lube-Ring Gas Service Valve at a residence located in Voorhees, New Jersey causing property damage to one of Plaintiff's customer's home and allegedly causing property damage to an adjacent residence.

35.     Later, on or around July 18, 2005, Plaintiff experienced another failure of the Rockford Eclipse Series 125 Lube-Ring Gas Service Valves valve at a residence in Deptford, New Jersey caused by the defective design of the Rockford-Eclipse Series 125 Lube-Ring Gas Service Valve.

36.     Plaintiff has also experienced three other failures as a result of the defectively designed Rockford-Eclipse Series 125 Lube-Ring Gas Service Valve, including one failure on March 12, 2008 in Berlin, New Jersey.

37.     An investigation, which was completed on or around July 2008, of the Rockford-Eclipse Series 125 Lube-Ring Gas Service Valve that caused the explosion and the other failures has concluded that the Valves that were purchased by Plaintiff from Defendants Eclipse and/or Mueller and installed in approximately 70,000 residences or businesses throughout Plaintiff's service territory were defectively designed.

38.     In order to protect the public health and safety and to meet its statutory duty to provide safe, adequate and proper service to its customers, Plaintiff is compelled to remove the defectively designed Valves manufactured and sold to Plaintiff by Defendants from these residences and/or businesses and to replace them with properly designed and manufactured valves.

6

## COUNT I – VIOLATION OF THE NEW JERSEY
## CONSUMER FRAUD ACT
## PLAINTIFF v. ROCKFORD-ECLIPSE, ECLIPSE, INC., ECLIPSE
## COMBUSTION AND/OR POWER EQUIPMENT CO., MUELLER
## COMPANY, LTD. AND MUELLER GROUP, LLC

39. Plaintiff repeats and incorporates each allegation of the Complaint as if set forth at length herein.

40. The New Jersey Consumer Fraud Act prohibits the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission or any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . or with the subsequent performance of such person as aforesaid." N.J.S.A. 56:8-2.

41. South Jersey is a "Person" as defined by N.J.S.A. 56:8-1(d).

42. The Valves fall within the definition of "merchandise" provided in N.J.S.A. 56:8-1.

43. Defendants engaged in unconscionable commercial practices, including, but not limited to, the following:

    a. Representing that the Valves have characteristics, uses, and benefits, they did not have;

    b. Representing that the Valves are of a particular standard, quality, or grade;

    c. Representing that the Valves were "maintenance free;"

    d. Representing that the Valves were good for their intended use which was to allow gas to flow and be ready

7

and available to safely stop gas from flowing in the rare instances when it is necessary to shut off the gas; and

e.    Failing to warn Plaintiff of defects, contrary to the public health and safety of Plaintiff's customers.

44.    Despite the representations of Defendants, the Valves did not function as intended and did not possess the characteristic Defendants represented they had.

45.    Defendants acted knowingly with the intent to cause Plaintiff's reliance thereupon in the sale of Valves to Plaintiff.

46.    Plaintiff relied on the representations of the Defendants in purchasing the Valves.

47.    Plaintiff was not aware of the defect at the time it purchased the Valves and would not have purchased the Valves if Defendants had disclosed the defect at issue

48.    Plaintiff sustained ascertainable loss in that it was misled into buying a product that was ultimately worth less to it than the product it was promised.

49.    As a result of Defendants' actions and omissions, Plaintiff is compelled to remove the defectively designed Valves manufactured and sold to Plaintiff by Defendants from these residences and/or businesses and to replace them with properly designed and manufactured valves, at a significant cost.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, including punitive and treble damages, together with attorneys fees, costs of suit and such other relief as the court may deem proper.

DATED:                           COZEN O'CONNOR
                                 A Pennsylvania Professional Corporation


                          By:   /s/ Dexter Hamilton
                                Daniel J. Bitonti, Esquire
                                Dexter Hamilton, Esquire
                                Suite 300, Liberty View
                                457 Haddonfield Road
                                P.O. Box 5459
                                Cherry Hill, New Jersey 08002-2220

## CERTIFICATE OF SERVICE

I, Dexter Hamilton, hereby certify that on the 5th day of December, 2011, I

served a true and correct copy of the Amended Complaint to the following counsel

via ECF service:

Jeannette E. Viala, Esquire
O'Connor Kimball, LLP
1500 JFK Blvd., Suite 1100
Philadelphia, PA 19102

Tiffany Alexander, Esquire
Campbell, Campbell, Edwards & Conroy, PC
690 Lee Road, Suite 300
Wayne, PA 19087

Charles C. Eblen, Esquire
Shooke, Hardy & Bacon, LLP
2555 Grand Blvd.
Kansas City, MO 64108

By:   */s/ Dexter Hamilton*
           Dexter Hamilton, Esquire